UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT   OF ANTILL PIPELINE CONSTRUCTION CO., INC. AS OWNER OF THE BARGE LML 103 AND M/V RUTH R. AND AS ALLEGED CHARTERER OF THE BARGE GD 897 FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 09-3646<br><br><br>SECTION "C" (2) |

**ORDER AND REASONS**

This matter is before the Court on motion for partial summary judgment by Antill Pipeline Construction Co., Inc., as owner of the Barge LML 10 and M/V RUTH R ("Petitioner") seeking that the Court find that the estates and heirs of the driver(s) of a recreational fishing vessel who died in an allision with Petitioner's barge and tug units, which were located within Louisiana navigable waters, are statutorily barred from recovering damages. Rec. Doc. 249.   Primarily, Petitioner moves the Court to determine whether La. Rev. Stat. § 9:2798.4, which prohibits recovery by the estate of the operator of a watercraft who is:  (1) found to have driven while his blood alcohol concentration was of 0.08 percent or more, (2) found to be in excess of twenty-five percent negligent as a result, and (3) whose negligence is found to be a contributing factor to the damage, may be applied, as opposed to the fault allocation method prescribed by general maritime law.[1]  Rec. Doc. 249.  While the parties do not dispute that general maritime law applies

---

[1] Alternatively, Petitioner argues that The Pennsylvania Rule applies, that The Louisiana Rule applies, that any liability to passengers is subject to reduction under La. Civ. Code art. 2323 and that the comparative fault as to all claimants should be apportioned even if a genuine issue of material fact exists as to the identity of the operator.

1

to the instant case, Petitioner argues that the Louisiana state statute may be applied to this action as well.  Id.   Having considered the record, the memoranda, and the law, the Court concludes, for the reasons stated below, that as a matter of law La. Rev. Stat. § 9:2798.4 cannot be applied in a maritime wrongful death action, and accordingly the heirs and estate of the operator of the watercraft are not preemptively barred from recovery of damages.

## I. BACKGROUND

Petitioner filed this complaint under the Shipowners' Limitation of Liability Act, 46 U.S.C.App. § 30501 *et seq.* (formerly 46 U.S.C. § 181, *et seq.)* to exonerate or limit damages payable to the decedents' representatives.  Rec. Doc. 1.  Relatives and the estates representing the deceased craft operator(s) and passengers filed answers and complaints against Petitioner pursuant to the Court's Order dated May 26, 2009.  Rec. Doc. 3; Rec. Docs. 13, 24, 27.  Claimants seek pecuniary, nonpecuniary, and punitive damages on behalf of the decedents, as well as the decedents' spouses and children under applicable general maritime and/or Louisiana law.  Id.  Petitioner has moved for partial summary judgment in its favor, based on its contention that the operator of the boat is statutorily barred from recovery of damage, and the passengers are comparatively at fault. Rec. Doc. 249-1 at 19.

At the outset, the Court finds that the issue as to which Claimant was operating the watercraft at the time of the accident is an unsettled and disputed question of fact. Discovery is still ongoing.  The Court considered simply dismissing Petitioner's motion as premature.   However, it has determined that a preliminary determination of the

applicability of La. Rev. Stat. § 9:2798.4 and Louisiana law may facilitate the orderly disposition of this matter.

In the memorandum and supplemental memorandum supporting their motion for partial summary judgment, Petitioner argues that Louisiana Revised Statute § 9:2798.4 may be applied in this case.  Rec. Docs. 249-1, 262-2.  If the Louisiana statute were to be applied here in force, it could statutorily bar the operator of the watercraft which allided with Petitioner's barge and tug units from recovery.  La. Rev. Stat. § 9:2798.4 provides, in pertinent part:

> A.  Neither the state, a state agency, or a political subdivision of the state nor any person shall be liable for damages, including those available under Civil Code Article 2315.1 or 2315.2, for injury, death, or loss of the operator of a motor vehicle, aircraft, watercraft, or vessel who:
>     (1) Was operating a motor vehicle, aircraft, watercraft, or vessel while his blood alcohol concentration of 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood . . .
> B.  The provisions of this Section shall not apply unless:
>     (1)  The operator is found to be in excess of twenty-five percent negligent as a result of a blood alcohol concentration in excess of the limits provided in R.S. 14:98(A)(1)(b) . . . and
>     (2) This negligence was a contributing factor causing the damage.
> C.   For purposes of this Section, "damages" include all general damages, including those otherwise recoverable in a survival or wrongful death action, which may be recoverable for personal injury, death or loss, or damage to property by the operator of a motor vehicle, aircraft, watercraft, or vessel or the category of persons who would have a cause of action for the operator's wrongful death.

In opposition, Claimants argue that the Louisiana statute, which would serve as a total bar to recovery by the operator of the watercraft, may not be applied in the instant action because the allision occurred on Louisiana territorial waters, and thus the federal general maritime law's settled liability allocation doctrine of comparative fault should be applied solely, preempting application of the Louisiana statute which would, in barring recovery by the boat's operator, disrupt the use of maritime law comparative fault

liability allocation.   Rec. Doc. 260 at 4-9; Rec. Doc. 255-1 at 16-20; Rec. Doc. 283 at 1-8.

## II. LAW & ANALYSIS

A.  EVOLUTION OF WRONGFUL DEATH AS A CAUSE OF ACTION UNDER GENERAL MARITIME LAW

Prior to the Supreme Court's decision in Moragne v. States Marine Lines, Inc. 398 U.S. 375, 90 S. Ct. 1772, 26 L. Ed. 2d 339 (1970), no federal maritime cause of action was recognized for the wrongful death of a non-seaman who was killed in state territorial waters, less than three nautical miles from shore, and whose circumstances were not covered by his state's wrongful death statute.  At the time, representatives of a person killed at sea could seek damages under (1) the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§30302-30303 for the death of any person killed *more then* three nautical miles from shore; (2) the Jones Act, 46 U.S.C. § 30104, for the death of a seaman killed in any waters when the death was caused by the negligence of the seaman's employer; or (3) a state wrongful death statute, for the death of a person who died in territorial waters in circumstances covered by the statute.  The Supreme Court in Moragne held for the first time that an action for wrongful death is available under the general maritime law "for death caused by violation of maritime duties." Id. at 1777.  Later, the Court in Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 121 S.Ct. 1927, 150 L.Ed.2d 34, 2001 AMC 1817 (2001) held that the general maritime wrongful death action that was recognized in Moragne is also available for wrongful death based upon negligent breach of a maritime duty of care. Id. at 820.   In effect, the newly created Moragne action substituted state wrongful death statutes, placing the action within the area of admiralty jurisdiction.   The Moragne cause of action is

4

principally utilized today as a remedy for representatives of passengers and other non-seamen who are killed in non-DOHSA admiralty jurisdiction, such as the Claimants in the case at bar.

B.  APPLICATION OF A STATE LAW WHICH DENIES REMEDY TO HEIRS AND ESTATE OF DECEASED IN MARITIME WRONGFUL DEATH ACTIONS IS NOT SUPPORTED BY THE HOLDING OF YAMAHA MOTOR CORP. v. CALHOUN

Petitioner argues in its Supplemental Memorandum in Support of Antill's Motion of Partial Summary Judgment that, as a question of law, Louisiana Revised Statute § 9:2798.4 is controlling, and is not preempted by general maritime law. Rec. Doc. 262-2 at 2.  It argues that the Supreme Court's holding in Yamaha Motor Corp. v. Calhoun, 516 U.S. 199(1996) supports that contention. Rec. Doc. 262-2 at 2-3.  In Yamaha, the Court held that when a non-seafarer is killed within state territorial waters, the *remedies* applicable under the general maritime law may, under certain circumstances, be supplemented by state law *remedies*. Yamaha, 516 U.S. at 214-16.  Petitioner argues that this holding should be interpreted to allow the Louisiana statute in question, which could deny all recovery to the operator of the watercraft who is found to have been under the influence of alcohol, to be applied to the Claimant's wrongful death action.  For the foregoing reasons, the Court does not agree.

In Yamaha, a young girl was killed in a jet-ski accident in territorial waters, and her parents sued the jet-ski manufacturer under Pennsylvania's wrongful death and survival statutes. Id. at 202.  The Supreme Court found that, in light of the "humane and liberal character of admiralty proceedings recognized in *Moragne*," that state remedies remain applicable in such cases. Id. (internal quotations omitted).  The Court further noted that "*Moragne*, in sum, centered on the extension of relief, not on the contraction

5

of remedies." Id. at 213.  Since Yamaha, it has become settled that, in many cases, state law remedies can be accessed and applied by plaintiffs in non-seaman wrongful death actions to supplement those provided by federal maritime law. See, e.g., Felarise v. Cheramie Marine, L.L.C., 2010 WL 375229, *2 (E.D. La.); Kelly v. Bass Enterprises Production Co., 17 F. Supp. 2d 591, 593-94 (E.D. La., 1998). However, fault and liability allocation has remained an issue governed by general federal maritime law in such actions. See Calhoun v. Yamaha Motor Corporation, USA, 216 F.3d 338, 351 (3rd Cir. 2000); In Re Amtrack "Sunset Limited" Train Crash in Bayou Canot, Alabama, On September 22, 1993, 121 F.3d 1421, 1423-4 (11th Cir. 1997).  Indeed, upon remand from the Supreme Court's decision, the United States Court of Appeals for the Third Circuit held that federal maritime law, not state law, governs liability for wrongful death actions where the incident occurred in territorial waters, due to the need for uniformity in maritime law. Calhoun v. Yamaha Motor Corp., 216 F. 3d 338 (3d Cir. 2000) ("Yamaha II").  This holding strongly suggests that a state statute the likes of La. Rev. Stat. § 9:2798.4, which could deny all liability of one party in an allision when the other party is found to have been under the influence of alcohol and at fault in the accident (and for which there is no federal maritime precedent), should not be applied in the context of a Moragne action and must yield to federal maritime law's governance of liability. See id. While Yamaha would potentially allow for a plaintiff to supplement the remedies available under federal maritime law with state law remedies to allow for *additional* recovery, it can not be read to allow a defendant to be immunized from liability, thus *denying* any and all remedies to the survivors and estate of a deceased non-seaman in an admiralty allision. This view finds little support in case law and would be in direct

6

contradiction with the "humane and liberal character of admiralty proceedings." Yamaha, 516 U.S. at 202.

C. LA. REV. STAT. § 9:2798.4 MAY NOT BE APPLIED TO THE INSTANT MARITIME WRONGFUL DEATH ACTION BECAUSE DOING SO WOULD WORK PREJUDICE TO A CHARACTERISTIC FEATURE OF THE GENERAL MARITIME LAW AND INTERFERE WITH THE UNIFORMITY OF GENERAL MARITIME LAW

Analysis regarding the supplementation of maritime law by state law has historically been governed by a three-factor test developed in Southern Pacific Co. v. Jensen, 244 U.S. 205 (1917). According to Jensen, a court may supplement general maritime law with state law if (1) it does not conflict with an applicable act of Congress; (2) it does not work material prejudice to a characteristic feature of general maritime law; or (3) it does not interfere with the proper harmony and uniformity of the general maritime law in its international and interstate relations. Petitioner argues that in applying this three-part test to La. Rev. Stat. 9:2798.4 this Court should find that the statute must not be preempted by general maritime law, but applied in force. Rec. Doc. 262-2 at 3-7. This argument is not supported by the analysis regarding preemption of state law by federal maritime law that has evolved since the Jensen decision in 1917. It must be noted that, while the analysis forwarded in Jensen is instructive in its expression of the key concerns when deciding a case involving maritime law preemption of state law, and has not been expressly overruled, it has been greatly undermined as precedent, and is thus not binding. This is indicated by the Yamaha decision in which the Supreme Court concluded that state remedies were available to supplement admiralty remedies in

7

a wrongful death case, yet did not apply the Jensen criteria, and did not even cite the case in its opinion.  *See generally* Yamaha, 516 U.S. 199.

It is not disputed that the Louisiana statute satisfies the first prong of Jensen; La. Rev. Stat. § 9:2798.4 certainly does not conflict with any applicable act of Congress. However, whether the second and third prongs are satisfied is greatly disputed by the parties.  The key concerns in cases in which a party wishes to apply state law in an admiralty action is whether to do so would work material prejudice to a key feature of maritime law or significantly disrupt maritime law's harmony and uniformity, mindful of the fact that maritime law is " a conceptual body whose cardinal mark is uniformity." Lewis v. Timco, Inc., 716 F.2d 1425, 1428 (5th Cir. 1983) (*en banc*).

Petitioner argues that the Louisiana statute does not work material prejudice to a characteristic feature of general maritime law because "comparative fault is and has long been a doctrine of general application in both maritime and land based torts.  In addition, § 9:2798.4 is not a contributory negligence statute, thus contradicting general maritime law's comparative fault principles."  Rec. Doc. 262-2 at 6. Petitioner relies on American Dredging Company v. Miller, 510 U.S. 443 (1994) where the Court found that because the doctrine of *forum non conveniens* did not originate in admiralty or have exclusive application there, but rather had long been a doctrine of general application, that it should not be considered a "characteristic feature" of maritime law, and thus was not prejudiced by applying the state statute. Miller, 510 U.S. 446-57.  However, while the majority in Miller purported to hinge its analysis on the Jensen characteristics, a fair reading of Justice Scalia's majority opinion indicates that the controlling factors in the Court's decision to apply the state law were that the state law in question was characterized as

8

"procedural" in nature, coupled with the fact that its application was not "outcome determinative." Id. at 458-59 (Stevens, J. concurring). The Court finds that La. Rev. Stat. § 9:2798.4 and its relationship to the maritime doctrine that it threatens, that of comparative fault allocation, to be distinguishable. While the doctrine of *forum non conveniens*, which the statute in Miller contradicted, is an initial procedural matter, the doctrine of comparative fault that is at issue here goes beyond procedure to the heart of the matter in question: the liability of the parties. Thus, unlike the state statute in Miller, the Louisiana statute is clearly "outcome determinative." Furthermore, the doctrine of comparative fault is firmly established within maritime law. While comparative fault is not utilized *solely* in the context of maritime law, we do not believe, as the Petitioner suggests, that a proper reading of Miller mandates that we interpret the phrase "a characteristic feature of maritime law" to mean "feature *unique to* maritime law". As the Fifth Circuit held in Lewis, "comparative fault has long been the accepted risk-allocating principle under the maritime law. " Lewis at 1428. Thus, allowing the Louisiana statute to be enforced, preempting maritime law's usual comparative fault allocation, would certainly work material prejudice to a doctrine that is a characteristic feature of maritime law.

   Additionally, Petitioner's argument that § 9:2798.4 is not a contributory negligence statute, and thus somehow is not disruptive to maritime law's principles of comparative negligence, is not convincing. Rec. Doc. 262-2 at 5-6. The characterization of the statute is not what is contemplated by the second Jensen prong, but rather, whether in *effect* it works material prejudice to maritime law's characteristic features. Because the effect of the state statute's application could be to totally shield one party from all

liability to another party who could be found to be, at a minimum, twenty-five percent negligent as a result of operating a vehicle under the influence of alcohol, the doctrine of pure comparative fault would be frustrated and materially prejudiced. Thus, the second Jensen prong is violated by La. Rev. Stat. § 9:2798.4.

Even if the Court was to accept the Petitioner's proffered arguments that the Louisiana statute meets the second prong of Jensen, its application would once again be invalidated due to its failure to meet the concerns inherent to the third prong of Jensen. Under the third Jensen prong, federal maritime law preempts a state statute if the state statute would interfere with the proper harmony and uniformity of the general maritime law in its international and interstate relations. Jensen, 244 U.S. at 216-17. Weighing the interest in uniformity of maritime law against the application of a state law requires a balancing of these interests. *See* Yamaha, 516 U.S. at 213-16. As in Yamaha, the uniformity concerns in the instant case, regarding the governance of liability between parties in wrongful death actions by nonseamen in state territorial waters, are rather strong. Calhoun 216 F.3d. 338 at 351. This Court agrees with the Third Circuit's reasoning in its decision on remand from the Yamaha decision that

> [i]f we were to adopt the view that the substantive standards by which an admiralty defendant's liability is adjudged is governed by the law of the state in which the alleged injury occurred, there would be no uniformity in such standards. Indeed, such uniformity concerns informed the Moragne Court's decision to overrule the Harrisburg.

Calhoun, 216 F.3d 338, 351 (internal citations and quotations omitted). While states have traditionally been given substantial leeway in providing their own environmental and safety standards for maritime activities, La. Rev. Stat § 9:2798.4 goes beyond setting a safety standard to governing fault allocation and denying all recovery to a party who

10

falls within its ambit. *See* Brockington v. Certified Elec., Inc., 903 F.2d 1523, 1530 (11th Cir. 1990) (asserting that state interests include permission to regulate matters of local concern without federal government interference); Yamaha, 40 F.3d 338 at 344 (noting that state interests include policing territorial waterways and protecting citizens through tort systems). To apply the state statute would impermissibly interfere with maritime law's uniformity in its settled fault allocation scheme in wrongful death cases, and is not the sort of statute which was contemplated by the Yamaha court when it preserved the application of state *remedial* statutes to deaths of nonseafarers within territorial waters. *See* Yamaha, 516 U.S. at 215-16.

D. THE TREND IN FEDERAL JURISPRUDENCE IS TOWARD RECOGNITION THAT PUTATIVE LIABILITY IN ADMIRALTY WRONGFUL DEATH ACTIONS SHOULD BE GOVERNED BY FEDERAL MARITIME STANDARDS AND MUST NOT YIELD TO CONFLICTING STATE STATUTES

The federal jurisprudence in the years since the Supreme Court's decision in Yamaha supports the conclusion that while a state's remedial scheme may be applied in a non-seaman wrongful death actions within state territorial waters, putative liability in said actions should be governed by federal maritime standards which must not yield to statutes such as La. Rev. Stat. 9:2798.4, which would require departure from these standards.

As previously noted, this view was most recently espoused by the Third Circuit in Yamaha II, which stated in no uncertain terms that "we hold that federal maritime standards govern the adjudication of a defendant's . . . putative liability in an admiralty action brought pursuant to a state wrongful death/survival statute." Calhoun, 216 F.3d 338, 351. The court based this decision primarily on its concern for the need for

11

uniformity in maritime law, particularly with regard to the rules of conduct and liability. Id.

This view finds further support in a 1997 opinion of the United States District Court for the Southern District of New York.  In O'Hara v. Celebrity Cruises, Inc., 979 F. Supp. 254, the court interpreted Yamaha in the same light as the Third and Eleventh Circuits, and as this Court has interpreted it today.  In holding that punitive damages could not be awarded as a state law supplement to general maritime law's federal remedies in a maritime personal injury case, the court stated that

> [t]he thrust of *Yamaha* is to argue that considerations of uniformity in federal maritime wrongful death actions only require that standards of *liability* be exclusively determined by federal maritime law and that, once such liability has been shown, there is no antagonism to such a policy in supplementing federal remedies with those available under otherwise applicable state law.

Id. at 256. While the actual holding of O'Hara is not relevant to the case before us, the dicta quoted herein is further indication of the trend in our federal jurisprudence towards a view that in wrongful death Moragne actions, the liability scheme must be determined by federal maritime law, and thus any state statute must yield insofar as it conflicts with or prejudices admiralty law's settled liability allocation mechanism, comparative fault.

Finally, prior to Yamaha II, but subsequent to the Supreme Court's Yamaha I decision, the United States Court of Appeals for the Eleventh Circuit denied effect to an Alabama wrongful death statute which prohibited apportionment of damages among joint tortfeasors, which conflicted with the federal maritime law which required that individual fault among tortfeasors be apportioned, as in the case before us. In Re Amtrack "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22 1993, 121 F.3d 1421, 1423-24 (11 Cir.  1997).  The court discussed the Yamaha decision and distinguished it

from the case before it, finding that "the *Yamaha* Court, while aware that its decision would create, to some extent, unavoidable conflict between state law and federal maritime law, did not intend to wholly sacrifice long-standing admiralty principles at the altar of states' rights." Id. at 1424. The court further noted that "the [Yamaha] Court confined its holding 'to the modest question whether it was *Moragne's* design to terminate recourse to state remedies'." Id. In Amtrack, as in the instant case, the statute in question "conflict[ed] with . . . fundamental admiralty law principles that bear directly on the rights and liabilities of the parties", namely the "apportionment of damages for joint tortfeasors." Id. at 1426. The court noted that the fact "[t]hat substantive admiralty law rights are being threatened in this case is a critical factor in considering the relative weight of federal maritime interests," and held that "in a case like the present, where substantive admiralty principles are placed at risk by the potential application of state law, there is 'no leeway for variation or supplementation by state law." Id. (quoting Yamaha, 516 U.S. at 210). Accordingly, the court denied effect to the Alabama statute insofar as it prohibited apportionment of fault and damages among joint tortfeasors. Id. at 1427. This Court agrees with the views of the Eleventh and Third Circuits, and therefore find that La. Rev. Stat. 9:2798.4 does not apply to the case at bar as a matter of law.

E.  PETITIONER'S ALTERNATIVE ARGUMENTS

In this motion, Petitioner anticipates issues normally addressed at trial. By making the preliminary ruling as to the inapplicability of La. Rev. Stat. § 9:2798.4, the Court implicitly rejects Petitioner's alternative argument that the comparative fault of passengers is governed by Louisiana land-based law, including La. Code. art. 2323, rather than maritime law, and also rejects Petitioner's bald argument that the Court

13

should apportion fault as to all claimants individually in the event the identity of the operator can not be established.  The arguments pertaining to the application of <u>The Pennsylvania</u> Rule and <u>The Louisiana</u> Rule remain for trial.

    Accordingly,

    IT IS ORDERED that the motion for partial summary judgment is DENIED. Rec. Doc. 249.

    New Orleans, Louisiana, this 5th day of December, 2011.

                                  HELEN G. BERRIGAN
                                  UNITED STATES DISTRICT JUDGE