UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT | * CIVIL ACTION NO. 09-3646 |
| OF ANTILL PIPELINE CONSTRUCTION | *               c/w  10-2633 |
| CO., INC., AS OWNER OF THE BARGE | *               c/w  11-3058 |
| LML 103 AND M/V RUTH R, AND AS | * |
| ALLEGED CHARTERER OF THE BARGE | * SECTION C-2 |
| GD 897 FOR EXONERATION FROM OR | * |
| LIMITATION OF LIABILITY | * JUDGE HELEN G. BERRIGAN |
| | * |
| **Applies to: 09-3646 & 11-3058** | *MAG. JOSEPH C. WILKINSON, JR. |
| | * |
| ***************************************** | * |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### *PREAMBLE*

This matter arises out of an allision between a recreational fishing vessel and a lit barge at night in an un-navigable shallow portion of a canal's bank littered with tree stumps and debris. It is indisputable that, at the time of the allision, the operator and passengers of the fishing vessel were severely intoxicated and that the vessel was recklessly traveling at an extraordinarily high rate of speed.

**MAY IT PLEASE THE COURT:**

Petitioner-in-limitation, Antill Pipeline Construction Co., Inc. ("Antill"), as owner of the Barge LML 103 and M/V RUTH R, submits its Memorandum in Support of its Motion for Summary Judgment against Chartis Specialty Insurance Company, formerly known as American International Specialty Lines Insurance Company ("Chartis"). The evidence and law set forth hereafter clearly establishes that there is no genuine issue of material fact that the Chartis insurance policy does not exclude coverage for the damages arising from the subject incident.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of an incident that occurred on the evening of May 20, 2009 when a recreational fishing vessel allided with Antill's LML 103 in the Falgout Canal just east of the Louisiana Highway 315 bridge near Theriot, Louisiana at approximately 11:15 p.m.[1] The fishing vessel was owned by decedent Michael J. Carrere, Sr.[2] and occupied by Carrere and four other individuals, all of whom were severely intoxicated at the time of the incident.[3] Carrere and the four other occupants died instantly.

Antill, as alleged owner and/or charterer of the barges, filed a Complaint for Exoneration from or Limitation of Liability pursuant to the Shipowners' Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.* following the incident.[4] Claimed beneficiaries of all five of the vessel occupants filed claims in the limitation action asserting their right to damages resulting from the deaths of their respective decedents.[5] In turn, Antill filed a Third Party Complaint against Tarpon Rentals, Inc. ("Tarpon"), the employer of Carrere, and Chartis as Tarpon's insurer, generically naming it as ABC Insurance Company ("ABC").[6] It is has since been determined that Chartis is in part ABC.[7] In its Third Party Complaint Antill asserted that Carrere was in the course and scope of his employment at the time of the incident; and therefore, Tarpon is liable

---

[1] See Rec. Doc. No. 1 of Civil Action 09-3646 at ¶ IV (all referenced Court documents herein apply to Civil Action No. 09-3646 unless otherwise indicated).
[2] Rec. Doc. No. 519 at ¶ 5.
[3] See St. Louis University Toxicology Laboratory Reports of claimants, requested by Terrebonne Parish Corner, attached hereto as Exhibit "A," *in globo*.
[4] Rec. Doc No. 1.
[5] Those claims are as follows: (1) Claim of Jane Voss, as alleged heir at law to the estate of William Norris Voss (Rec. Doc. 12); (2) Claim of Jane Voss, as alleged spouse of William Norris Voss, Spencer Voss, and Zachary Voss (Rec. Doc. 13); (3) Claim of Marlene Gina Meche, individually and on behalf of her minor son, Rhett Meche, Jonathan Meche and Jena Meche (Rec. Doc. 27); (4) Claim of Brandy Frommeyer Carrere, individually and as a natural tutrix of her minor children, Michael J. Carrere, Jr. and Maxx M. Carrere (Rec. Doc. 24); (5) Claim of Jamie Beth Carrere (Rec. Doc. 46); (6) Claim of Deanna Flak (Rec. Doc. 44); and (7) Claim of Cole Gauthier (Rec. Doc. 45).
[6] Rec. Doc. Nos. 19 and 438.
[7] Rec. Doc. No. 519 at ¶ 4.

directly and vicariously for the fault of Carrere.[8]  Accordingly, Antill claimed that should it be found liable for the death of any decedent, it is entitled to recover from Tarpon and its insurer(s) by way of defense, contribution, indemnity and/or recovery.[9]  Pursuant to Federal Rule of Civil Procedure 14(c), Antill subsequently tendered Tarpon as a direct defendant to the claimants.[10]  Tarpon answered the complaints of the claimants just as if they had named Tarpon as a direct defendant.[11]

Tarpon, a Louisiana corporation, has referred all claims against it arising from the subject incident to Chartis,[12] the insurer of a Commercial Umbrella Policy ("Policy"),[13] which was in effect at the time of the allision.[14]  Chartis has denied coverage under the Policy, and refused payment of any claims or damages.[15]  In light of Chartis' denial of coverage, Tarpon instituted a declaratory judgment action against Chartis seeking a declaration that the Policy provides coverage for the claims against Tarpon.[16]  The declaratory judgment action was later consolidated with the Antill limitation action.[17]  Thereafter, Chartis filed a Motion for Summary Judgment, currently pending in this Court, asserting that the Policy does not provide coverage to Tarpon for claims arising from the subject incident because the Policy "unambiguously excludes coverage for 'any marine liability'".[18]  Chartis is mistaken.  There is no genuine issue of fact that the Policy does not exclude coverage for the alleged damages arising from the allision.  Accordingly, Antill's Motion for Summary Judgment should be granted.

---

[8] Rec. Doc. No. 19 at 6.
[9] *Id.* at 8 and Rec. Doc. No. 438.
[10] Rec. Doc. No. 185.
[11] Rec. Doc. Nos. 512, 513, 514, 515, 516, and 517.
[12] Rec. Doc. No. 1 of Civil Action No. 11-3058 at ¶ 7.
[13] American International Specialty Lines Insurance Company, Commercial Umbrella Liability Policy with Crisis Response, attached as Exhibit "A" (Rec. Doc. No. 521-3) to Chartis' Motion for Summary Judgment, Rec. Doc. No. 521 at 1.
[14] Rec. Doc. No. 519 at ¶ 4.
[15] *Id.* at ¶ 8.
[16] Rec. Doc. No. 1 of Civil Action 11-3058.
[17] Rec. Doc. No. 8 of Civil Action 11-3058.
[18] Rec. Doc. No. 521-2 at 5.

## II. LAW AND ARGUMENT

### A. Summary Judgment Standard

According to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] A fact is "material" if it may affect the outcome of the suit under governing law.[20] An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party.[21] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[22] The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case.[23]

If the movant has met its burden, the non-moving party must then come forward and establish specific materials of fact in dispute to survive summary judgment.[24] This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence.[25] The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."[26]

Construction of an insurance contract is a question of law and as such, is appropriate for determination by summary judgment.[27]

---

[19] Fed. R. Civ. Pro. Rule 56(a).
[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[21] *Id.*
[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[23] *Id.* at 325; *Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).
[24] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[25] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).
[26] *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citation omitted).
[27] *Martco Limited Partnership v. Wellons, Inc.*, 588 F.3d 864, 878 (5th Cir. 2009); *Bonin v. Westport Ins. Co.*, No. 05-886 (La. May 17, 2006), 930 So. 2d 906, 910.

In this case, there are no genuine issues of material fact in dispute as to the issues raised in this Motion for Summary Judgment. Therefore, Antill is entitled to summary judgment as a matter of law.

### B.      Interpretation of Insurance Policies in Louisiana

Louisiana law governs the interpretation and application of the Policy as it was issued in Louisiana to a Louisiana insured.[28] In Louisiana, an insurance policy is a contract, and as with all other contracts, constitutes the law between the parties.[29] The policy should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[30] Words and phrases used in an insurance policy should be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.[31] The parties' intent, as reflected by the words of the policy, determines the extent of coverage.[32] When the language of the contract is clear and unambiguous, the agreement must be enforced as written.[33] Further, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.[34]

The policy should be construed as a whole, and one portion of the policy should not be construed separately at the expense of another.[35] Stated another way, an insurance policy must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or

---

[28] *See Methodist Health Sys. Found. v. Hartford Fire Ins. Co.*, No. 10-3292, 2011 U.S. Dist. LEXIS 71258, *5 (E.D. La. July 1, 2011).
[29] *Pareti v. Sentry Indemnity Co.*, 536 So.2d 417, 420 (La. 1988); *Carney v. American Fire & Indemnity Co.,* 371 So. 2d 815 (La. 1979).
[30] *Cadwallader v. Allstate Ins. Co.*, No. 02-1637 (La. June 27, 2003), 848 So. 2d 577, 580; *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co*., No. 93-0911 (La. Jan. 14, 1994), 630 So. 2d 759, 763.
[31] *Cadwallader,* 848 So. 2d at 580; *Carbon v. Allstate Ins. Co*., No. 97-3085 (La. Oct. 20, 1998), 719 So. 2d 437, 439-40.
[32] *Reynolds v. Select Properties, Ltd.*, No. 93-1480 (La. April 11, 1994), 634 So. 2d 1180, 1183.
[33] *Id.*
[34] *Gaylord Container Corp.* v. *CNA Insurance Co.*, No. 99-1795 (La. App. 1st Cir. April 4, 2001), 807 So. 2d 864, 871.
[35] *Crabtree v. State Farm Ins. Co.*, No. 93-0509 (La. Feb. 28, 1994), 632 So. 2d 736, 741 (emphasis provided).

5

made a part of the policy."[36] <u>If, however, after applying the general rules of contract construction an ambiguous policy provision remains, such provision is construed against the insurer and in favor of coverage.</u>[37]

In a suit brought under this Court's admiralty jurisdiction, this Court succinctly recognized these principles in interpreting an insurance policy when it stated as follows:

> [u]nder Louisiana law, an insurance policy is a contract that must be construed in accordance with the general rules of interpretation of contracts set forth in Louisiana Civil Code. Under the Civil Code, the judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. The words of the contract must be given their generally prevailing meaning, and when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Moreover, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Importantly, Louisiana law mandates that an insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.[38]

**C. There is no genuine issue of material fact that the Policy provides coverage for claims arising from the incident because no exclusion applies.**

**1. The Policy's Exclusions**

**a. Section V(A)**

Under Section V(A) of the Policy, coverage is excluded for any watercraft greater than 26 feet in length and being used to carry individuals or property for a charge.[39]

---

[36] *Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 206 (5th Cir.2007) (emphasis provided).
[37] *Id; Edwards v. Daughtery*, No. 03-2103 (La. Oct. 1, 2004), 883 So. 2d 932, 941; *Stewart Enters v. RSUI Indem. Co.*, 614 F.3d 117, 124 (5th Cir. 2010). *See H.E. Butt Grocery Co. v. National Union Fire Insurance Co.*, 150 F.3d 526, 532 (5th Cir. 1998) (holding that under Louisiana law, when a term an insurance policy has uncertain application, "the policy be interpreted in favor of the insured").
[38] *Black Stallion Enter. V. Bay & Ocean Marine, LLC,* No. 09-4504 c/w 09-6656, 2010 U.S. Dist. LEXIS 42607, *11-12 (E.D. La. Mar. 30, 2010) (citations and internal quotations omitted).
[39] Rec. Doc. No. 521-3 at Section V(A).

6

        **b.**    **Endorsement No. 15**

Relatedly, Endorsement No. 15 of the Policy forecloses certain "marine" indemnity coverage as summarized below:

> This policy is amended as follows:
>
> A. Solely as respects watercraft, Section V. Exclusions, Paragraph A is deleted in its entirety.
>
> B. Section V. Exclusion is amended to include the following additional exclusion:
>
> > Marine
> >
> > This insurance does not apply to any marine liability which includes, but not limited to the following:
> >
> > Charterers Liability
> > Safe Berth Legal Liability
> > Towers Liability
> > Ship Repairers Legal Liability
> > Terminal Operation Liability
> > Jones Act
> > Protection and Indemnity Liability
> > Ship Builders Liability
> > Stevedores Liability
> > Wharfingers Liability
> > U. S. Longshoreman and Harbor Workers
>
> However, if a Marine Employers Liability Coverage endorsement is attached to this policy, this exclusion shall not apply to liability for which coverage is afforded under such Marine Employer's Liability Coverage endorsement.
>
> All other terms, definitions, conditions and exclusions of this policy remain unchanged.[40]

It is not disputed that Carrere's fishing boat was less than 26 feet long and was not used to carry people or property for a charge, i.e., a commercial capacity. The sole question is whether Endorsement No. 15 forecloses coverage. As discussed below this endorsement does

---

[40] *Id.* at Endorsement No. 15.

not preclude coverage in this instance as the claims against Tarpon are not "marine liabilities" within the scope of Endorsement No. 15.

      **c.    The claims against Tarpon are not marine liabilities within the scope of Endorsement No. 15.**

          **(1)    Relationship Between Section V(A) and Endorsement No.15**

Under the Policy's marine watercraft exclusion in Section V(A), the Policy disclaims coverage for "Bodily Injury or Property Damage arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any insured."[41]  On the other hand, Section V expressly allows coverage for bodily injury or property damage arising out of a an accident involving a watercraft less than 26 feet long, not owned by Tarpon, and not being commercially utilized.[42]

Endorsement No. 15 must be applied sequentially and viewed in light of the <u>non-commercial</u> boat exception of Section V(A).  When all watercraft exclusions under section V(A) were deleted in their "entirety" under Paragraph A of Endorsement No. 15, the Policy then provided coverage for <u>all watercraft</u> for marine liability regardless of whether the watercraft was being utilized commercially.   In other words, Paragraph A of Endorsement No. 15 removed all watercraft exclusions from the Policy.

Paragraph B of Endorsement No. 15 then contradicts Paragraph A by inserting a watercraft exclusion.  Specifically, Paragraph B provides that "any marine liability" is not covered.[43]  The contradictions of Paragraphs A and B of Endorsement No. 15 are easily and logically explained if the intent of the phrase "any marine liability" in Paragraph B is simply

---

[41] *Id.* at Section V(A).
[42] *Id.*
[43] *Id.* at Endorsement No.15.

viewed to exclude only traditional risks and liabilities associated with <u>commercial</u> marine activity, thus leaving the Policy's coverage for non-commercial liability unaffected.

This intent is evidenced by Endorsement No. 15's illustrative list of the types of liabilities excluded. While "marine liability" is not defined in the policy, those listed examples include all manner of traditional, <u>commercial</u> marine liabilities, including Jones Act, Charterer, and Towers Liability among others. Those are the types of risks and liabilities that would typically require a commercial marine liability policy to afford coverage. Importantly, the illustrative list does not list any liabilities arising out of the non-commercial use or operation of a small recreational fishing boat. This is the case because coverage for those claims is generally afforded by a commercial general liability ("CGL") policy such as the one issued by Tarpon's primary CGL insurer, First Mercury Insurance Company ("First Mercury"). Had Chartis wished to exclude such claims from the Policy's coverage it could have simply deleted the non-commercial boat exception from Section V's standard provisions and left the extremely board exclusionary language of Section V in place. Instead, the Policy replaces Section V's broad exclusion, as well as the non-commercial boat exception, with the more narrow <u>commercial</u> exclusion of Endorsement No. 15. It is illogical to take Chartis' interpretation of Endorsement No. 15 that this endorsement removed coverage for all watercraft under Paragraph A only to replace it with another all encompassing watercraft exclusion in Paragraph B.

Along these lines, Antill retained Burl Daniel as an expert to comment on whether the Policy excludes coverage for the subject incident.[44] In sum, following an analysis of both the First Mercury and Chartis policies, Daniel found that the deletion of Section V's exclusions

---

[44] See verified expert report of Burl Daniel with exhibits, attached hereto as Exhibit "B," *in globo*.

noted in Paragraph A of Endorsement No. 15 expanded coverage under the Policy to include liabilities arising from circumstances similar to the subject incident.[45]

### (2) Defining "Marine Liability"

In its pending Motion for Summary Judgment, Chartis argues that the phrase "marine liability" in Paragraph B of Endorsement No. 15 is not defined within the Policy and, therefore, based upon the *Merriam-Webster* definition of "marine," dubs this phrase to include all things wet.[46] Chartis further argues that this interpretation is supported by the fact that the phrase "marine liability" is followed by the all encompassing phrase "includes, but is not limited to".[47] Chartis' interpretation is too liberal. Antill concedes that "marine liability" is not defined within the Policy; however, on its website, Chartis discusses "marine liability insurance" solely in the context of "needs of transportation and facility operators".[48]

As testified to by a partial owner of Tarpon, Tarpon is an oilfield equipment rental company.[49] Neither Chartis nor the insurance industry at large would consider it to be a maritime "transportation or facility operator".[50] Accordingly, it cannot be convincingly argued that Chartis' use of the phrase "marine liability" in the Policy encompassed those liabilities arising from a non-owned small fishing vessel utilized in a non-commercial capacity by an oilfield equipment rental company. At a minimum, the fact that Chartis chose not to define "marine liability" must be construed against Chartis in favor of coverage.[51]

---

[45] *Id.* at 6.
[46] Rec. Doc. No. 521-2 at 8.
[47] *Id.*
[48] See verified expert report of Burl Daniel, attached hereto as Exhibit "B" at 7.
[49] See deposition transcript of Earnest Gautreaux, attached hereto as Exhibit "C," at 155-56.
[50] *Id.*
[51] *Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 206 (5th Cir.2007)*; Edwards v. Daughtery*, No. 03-2103 (La. Oct. 1, 2004), 883 So. 2d 932, 941; *Stewart Enters v. RSUI Indem. Co.*, 614 F.3d 117, 124 (5th Cir. 2010); *H.E. Butt Grocery Co. v. National Union Fire Insurance Co.*, 150 F.3d 526, 532 (5th Cir. 1998), *supra.*

### (3) The Follow Through Endorsement

In providing excess umbrella coverage, the Policy expressly tracks the coverage provided by the underlying CGL policy of First Mercury. Specifically, the Policy's Commercial General Liability Limitation Endorsement, Endorsement No. 7, provides, in relevant part as follows:

> [c]overage under this policy will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.[52]

The Policy lists general liability policies (the First Mercury policy) in the Schedule of Underlying Insurance.[53] These endorsements reflect the parties' intent that the Policy track the coverage afforded by the First Mercury policy. In other words, the Policy is intended to pick up claims that are covered by the First Mercury policy after those primary limits are exhausted.

To further explain, the First Mercury policy, like Section V of the Chartis policy, contains a broad exclusion for risks and liabilities arising out of the use of a watercraft.[54] Similar to the Chartis policy, the First Mercury policy also contains a broad exception to the exclusion which provides coverage to liabilities arising out of watercraft Tarpon does not own.[55] The customary limitation that the craft be less than 26 feet and not used to carry people or property for a charge was deleted from the First Mercury policy.[56] Thus, the underlying First Mercury policy provides very broad coverage to claims related to non-owned watercraft. Since, the First Mercury policy provides coverage for the claims against Tarpon, it follows that the Chartis' policy should be construed to also provide coverage as well in the event that the claims exceed

---

[52] Re. Doc. No. 521-3 at Endorsement No. 7.
[53] *Id.* at Endorsement No. 24.
[54] First Mercury Commercial General Liability Policy, attached as Exhibit "B" (Rec. Doc. No. 546-2) to Tarpon's Opposition to Chartis' Motion for Summary Judgment, at Section I(2)(g).
[55] *Id.* at Amendment of Watercraft Exclusion.
[56] *Id.*

11

the limits of the First Mercury policy. To interpret the Policy otherwise would improperly erase Endorsement No. 7 and ignore the intent of the Policy.

Along these lines, Daniel also found that the Policy provides coverage to Tarpon given that it follows from the coverage afforded by the First Mercury CGL policy.[57]

### (4) Tarpon did not intend to limit its coverage by purchasing additional coverage.

The context giving rise to inclusion of Endorsement No. 15 additionally supports an interpretation affording coverage. Endorsement No. 15 arises out of Tarpon's purchase of additional coverage for employee claims asserted under the Jones Act or general maritime law. This additional coverage purchased by Tarpon is reflected in the Policy's Marine Employers Liability Coverage Endorsement (Endorsement No. 14).[58] Given that this additional purchase of coverage by Tarpon is the impetus for inclusion of Endorsement No. 15, it is nonsensical to conclude that Tarpon actually lost the basic coverage afforded in the non-commercial boat exception of Section V(A) by purchasing additional marine coverage over that of the standard Policy. Certainly, a reasonable purchaser of the expanded marine coverage set forth in Endorsement No. 14 would not expect to lose that common and basic coverage for non-commercial vessels in Section V(A). Thus, when the expectation of the reasonable purchaser of the Chartis' policy is considered, Endorsement No. 15 must be construed to exclude only traditional, commercial marine perils.

Given the above, the only logical interpretation of the interplay between Section V and Endorsement 15 is to conclude that Endorsement No. 15 is intended to exclude only claims arising out of traditional, maritime business activities (except those covered by Endorsement No. 14) as reflected in the illustrative list of Endorsement No. 15. In short, the coverage for claims

---

[57] See Exhibit "B" at 5.
[58] Rec. Doc. No. 521-3 at Endorsement No. 14.

for bodily injury arising out of the non-commercial use of a non-owned recreational fishing boat are covered under the Policy and are unaffected by Endorsement No. 15's exclusion of "marine liabilities".

Taken as a whole, Endorsement No. 15 does not unambiguously delete from coverage liabilities arising out of the non-commercial use of a non-owned recreational fishing boat. In accordance with Louisiana law, any ambiguity in the policy, in this case the scope of Endorsement No. 15, must be construed in favor of coverage. Accordingly, there is no genuine issue of material fact that the Chartis Policy does not exclude coverage. Therefore, Antill's Motion for Summary Judgment should be granted.

### D. Limits of Insurance

Chartis has alternatively asserted that coverage is precluded because the underlying limits of liability have not been exhausted by payment of loss.[59] To address this point, Antill avers that this alternative issue raised by Chartis is separate and apart from the issue in this summary judgment motion—whether the Policy excludes coverage for the damages arising from the subject incident. Accordingly, deciding Chartis' alternative argument is not dispositive of the issues in Antill's instant Motion for Summary Judgment. Despite this, Antill concedes that indemnity from the Policy is contingent upon First Mercury exhausting its limits. In other words, if there is no judgment for which Tarpon is liable that reaches its primary insurance limits then Chartis does not pay.

---

[59] Rec. Doc. No. 521-2 at 4.

### III.  CONCLUSION

There is no genuine issue of material fact that the Chartis Policy provides coverage for the incident.  In accord with the terms of the Chartis Policy no exclusion applies.  Therefore, this Court should grant Antill's Motion for Summary Judgment.

                      Respectfully submitted,

                      **REICH, ALBUM & PLUNKETT, LLC**

                      /s/ ROBERT S. REICH
                      **ROBERT S. REICH, T.A. (#11663)**
                      **LAWRENCE R. PLUNKETT, JR. (#19739)**
                      **FRANCIS A. JUROVICH, III (#31212)**
                      Two Lakeway, Suite 1000
                      3850 N. Causeway Blvd.
                      Metairie, Louisiana 70002
                      Tel: (504) 830-3999
                      Fax: (504) 830-3950
                      E-mail: rreich@rapllclaw.com
                                lplunkett@rapllclaw.com
                                fjurovich@rapllclaw.com
                      *Attorneys for Antill Pipeline*
                      *Construction Co., Inc.*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are authorized to receive electronic service on this 17th  day of July, 2012.

                      /s/ ROBERT S. REICH