**Burl Daniel, CPCU, CIC, CRM**
3417 Hulen, Suite 104  Fort Worth, TX 76107-6125
burl@burldaniel.com | www.burldaniel.com
(817) 980 4897 / FAX (817) 887 5231

July 13, 2012

Mr. Robert S. Reich
Reich, Album & Plunkett, LLC
Two Lakeway Center, Suite 1000
3850 N. Causeway Blvd.
Metairie, LA 70002

### <u>Insurance Expert Report</u>

Re:  Antill Pipeline v. Chartis; Civil Action No. 09-3646, c/w 10-2633, and c/w 11-2131 in United States District Court Section C-2 for the Eastern District of Louisiana

Mr. Reich:

You engaged me on behalf of your client Antill Pipeline to review certain documents and render a report outlining my opinions in the referenced case.  This report is based on a review of case documents provided to date, my insurance experience and independent research.

Regarding my expert credentials, I entered the insurance business in 1973 and worked as a retail insurance agent from 1979-2004. My background includes experience as a corporate risk manager and Adjunct Professor of Insurance with two Texas universities.  The professional designations I hold are CPCU - Chartered Property Casualty Underwriter, CIC - Certified Insurance Counselor and CRM - Certified Risk Manager.  I hold Texas licenses as a Property-Casualty Agent and Risk Manager.  My Curriculum Vitae is attached as Exhibit A; further background regarding my credentials is available at www.burldaniel.com.  Pursuant to Rule 26(a)(2) of the FEDERAL RULES OF CIVIL PROCEDURE please find attached Exhibit B (Publications and Testimony) and Exhibit C (Documents Log).

Relevant to this case, my experience with Commercial General Liability and Marine insurance began in 1975.  As an agent I placed a wide variety of both types of these policies for various clients.  Service to these client insureds included coverage design, carrier negotiations, policy endorsements, assistance with filing claims, and monitoring carrier practices during the claim process.  As an insurance expert witness I have been retained on numerous cases requiring expertise with Marine insurance terminology and coverage issues.

*Antill Report -- Page 1 of 8*



Reference to specific documents, Bates numbered or otherwise, is offered by way of example only and should not be construed as the sole basis for my opinion(s) on a given issue.  In the interest of brevity, '0' prefixes to Bates numbers were deleted in this report; dates are expressed in numeric format (i.e. - April 7, 2010 is 4-7-10).  Reference to any law(s) is offered solely from my perspective as an insurance expert witness and should not be considered a legal opinion.

## Acronyms

| | |
|---|---|
| American Institute of Marine Underwriters | ("AIMU") |
| Antill Pipeline Construction Co. | ("Antill") |
| Carey Meche | ("Meche") |
| Chartis Specialty Insurance Company | ("Chartis") |
| Commercial General Liability | ("CGL") |
| Commercial Umbrella Liability | ("CUL") |
| First Mercury Insurance Company | ("FMIC") |
| Houma Oilman's Fishing Invitational | ("HOFI") |
| Insurance Services Office | ("ISO") |
| Lawrence Flak | ("Flak") |
| Marine Liability Limitation Endorsement | ("MLLE") |
| Martin Marietta Materials, Inc. | ("MMM") |
| Michael J. Carrere, Sr. | ("Carrere") |
| Motion for Summary Judgment | ("MSJ") |
| Rene Gauthier | ("Gauthier") |
| Tarpon Rentals, Inc. | ("Tarpon") |

## Exhibits

| | |
|---|---|
| "A" | Curriculum Vitae, Burl Daniel |
| "B" | Publications and Testimony |
| "C" | Documents Log |
| "D" | July 5, 2012 - Engagement Letter |
| "E" | AIMU Website Pages |
| "F" | Chartis CUL Policy Extractions |
| "G" | Marine Insurance Definitions |
| "H" | Chartis-ACE-Chubb Website Extractions |

### Case Overview

Tarpon is in the business of renting equipment to the oilfield industry in south Louisiana. The main office is located in Houma, LA, with a branch office in New Iberia, LA. As of May 2009 Tarpon was owned one-third each by Ernest Gautreaux, Tim Bergeron and Carrere. (www.tarponrentals.com; Ernest Gautreaux deposition at pages 10, 53; Bergeron Affidavit)

As part of its sales and marketing effort, Tarpon sponsored in part the HOFI event scheduled to begin 5-21-09. During the evening of 5-20-09 Carrere transported several Tarpon clients in his boat from a camp owned by Voss of W&T Offshore (Tarpon's largest client) to a pre-HOFI party/crawfish boil. The party was held at a fish camp on the Falgout Canal owned by a Mr. Moreau. Both during the pre-HOFI party and on the return boat ride, Carrere, Voss, Meche, Flak and Gauthier consumed excessive amounts of alcohol.

On the return trip Carrere's boat was travelling some 60mph when it collided with a moored barge owned by Antill. All five men riding in the boat were killed instantly.

At the time of the accident Tarpon was insured by FMIC for CGL and insured by Chartis for CUL. Tarpon's claim for defense and liability coverage for the incident was denied by Chartis. On 12-13-11 Tarpon filed a Complaint for Declaratory Relief against Chartis seeking to compel coverage for the incident. On 5-21-12 Chartis responded by filing a MSJ to dismiss Tarpon's suit for coverage. As basis for its claim denial Chartis' MSJ cited policy language requiring FMIC's underlying CGL limits to first be exhausted and marine liability exclusion wording in Chartis' manuscript MLLE.

This report thus focuses on the contrast of CGL and CUL policies as compared with marine liability insurance. The primary insurance issue at hand is in regards to coverage for a policyholder's vicarious liability resulting from the use and operation of non-owned watercraft.

### ISO

Since the 1970's ISO has been the predominant organization which promulgates standardized policy language and coverage forms for the Property & Casualty industry (www.iso.com). ISO's standardized policy forms facilitate consistent interpretation of policy language and coverage terms as understood among professionals within the insurance industry, as well as the courts during litigation proceedings.

This commentary is not intended to leave the impression that all CGL and/or CUL policies are identical. As is the case in this matter, insurers use various ISO endorsements to restrict or broaden coverage, and also use their own manuscript policy forms and endorsements. However, absent standardized forms and language to use as reference, it would be nearly impossible to

coordinate underlying CGL with CUL coverage. Policyholders and agents dealing with multiple carriers would have to clarify the intent of various terms and conditions each step of the way.

It is critical for the reader to understand that ISO's CGL and other liability forms by design have little or no application to insuring true maritime operations for marine liability exposures. Domestic U.S. maritime/marine carriers have for decades relied on organizations such as the AIMU (www.aimu.org) to provide coverage forms customized to address the exposures and insurance needs of true maritime/marine entities. It should be noted that Chartis is an AIMU member company. The international maritime/marine carriers are concentrated in London, UK, and for well over 100 years have relied on organizations such as the Institute of London Underwriters (ILU) to provide similar coverage forms customized for maritime/marine risks.

### FMIC Commercial General Liability

Tarpon's CGL policy at the time of the accident was written by FMIC using ISO's standard CGL coverage form CG 00 01 07 98 (which became available July 1998 – i.e. 07 98). FMIC's CGL policy provided Tarpon a $1,000,000 limit of liability for claims resulting from its Premises & Operations (i.e. - trip and fall), including Tarpon's vicarious liability for the non-owned boat accident of 5-20-09.

Regarding 'Watercraft' coverage, ISO's wording relevant to this case remained unchanged through eight revisions of its CGL form from November 1985 through the December 2007 edition (ISO's most recently promulgated CGL form). The 'Watercraft' language pertinent to this matter is extracted from the FMIC CGL policy (emphasis added):

> **2. Exclusions**
>
> This insurance does not apply to:
>
> g. ... Watercraft
>
> "Bodily injury"...arising out of the ownership, maintenance, use or entrustment to others of any...watercraft owned or operated by...any insured. Use includes operation and "loading or unloading".
>
> This **exclusion does not apply** to:
>
> (2) A watercraft you do not own that is:
>
> (a) Less than 26 feet long; and
> (b) Not being used to carry persons or property for a charge;

The above policy language provides Tarpon coverage for the accident of 5-20-09. Tarpon met all conditions required to trigger coverage for its vicarious liability resulting from Carrere's use of a non-owned watercraft:

This is **exclusion does not apply** to:

(2) A <u>watercraft you do not own</u> [Carrere owned the boat] that is:

    (a)  [Carrere's boat was] <u>Less than 26 feet</u> long; and
    (b)  [Carrere's boat was] Not being used to carry persons or property
       for a charge;

It should be noted that FMIC added its own manuscript "AMENDMENT OF WATERCRAFT EXCLUSION" endorsement which removed the qualifying language of 2(a) and 2(b). The net effect was that this 'AMENDMENT' actually <u>broadened</u> coverage and would have covered the accident even if Carrere's boat had been longer than 26 feet and/or he had been "carrying persons for a charge". Based on case facts, it had no effect on coverage for the accident.

### Chartis' Commercial Umbrella Liability

Chartis' CUL policy provided a $10,000,000 limit of liability over and above (excess of) FMIC's $1,000,000 primary (underlying) CGL limit detailed above.

Regarding 'Watercraft' coverage, the ISO wording in Chartis' CUL core policy form <u>is verbatim</u> the ISO wording used in FMIC's primary CGL policy. As respects 'Watercraft', Chartis' CUL policy would be understood to provide true 'follow-form' coverage. That is to say, since the 'Watercraft' coverage terms and conditions wording is identical ('follow-form') to that found in FMIC's primary policy, Chartis' CUL provides pure ('follow-form') excess coverage of $10,000,000 above FMIC's $1,000,000 underlying/primary limit.

Central to this dispute is Chartis' position that the manuscript MLLE (Marine Liability Limitation Endorsement) form Chartis attached to Tarpon's CUL policy excludes coverage for the accident of 5-20-09. The majority of Chartis' CUL core policy form consists of ISO and/or ISO-based wording. The MLLE was promulgated solely by Chartis. Chartis' reasoning for claim denial is based principally on the meaning of the term 'marine liability' found in item **B.** of the MLLE.

(Exhibit F)

To properly understand the MLLE's effect on coverage, items **A.** and **B.** should be analyzed sequentially (emphasis added):

<u>C</u>ommercial <u>U</u>mbrella <u>L</u>iability Policy with CrisisResponse®

<u>M</u>arine <u>L</u>iability <u>L</u>imitation <u>E</u>ndorsement

This policy is <u>amended</u> as follows:

**A.** Solely as respects Watercraft, Section V. Exclusions, Paragraph A. is <u>deleted in its entirety</u>.

Item **A.** "<u>deleted in its entirety</u>" the Watercraft exclusion from Chartis' core CUL policy form. In actuality, item **A.** broadened the policy to provide coverage for Tarpon's exposures to direct liability for <u>owned</u> and its vicarious liability for use of <u>non-owned</u> Watercraft <u>of any length</u>. Thus item **A.** extended coverage for Tarpon's vicarious liability for Carrere entertaining Tarpon clients while using his boat (a non-owned Watercraft to Tarpon).

**B.** Section V. Exclusions is amended to include the following <u>additional exclusion:</u>

Marine

This insurance <u>does not apply to</u> any **marine liability** which includes, <u>but is not limited to</u>, the following:

| | |
|---|---|
| Charterers Liability | Protection and Indemnity Liability |
| Safe Berth Legal liability | Ship Builders Liability |
| Towers Liability | Stevedores Liability |
| Ship Repairers Legal Liability | Wharfingers Liability |
| Terminal Operation Liability | U.S. Longshoreman and Harbor Workers |
| Jones Act | |

It should first be noted that item **B.** <u>does not specifically modify policy wording in regards to Watercraft</u>, but is <u>an additional exclusion</u> to 'Section V. Exclusions' of Chartis' core CUL policy form. Secondly, it should be noted that **marine liability** is not a defined term under Section VII. Definitions in the core CUL policy, nor is it defined in the MLLE form.

Chartis' MLLE from is poorly written, includes conflicting terminology, and is nonsensical at best. Though Chartis does not define the term **marine liability** in the policy or MLLE, Chartis contends the 5-20-09 accident was the subject of **marine liability** and is thus excluded. Tarpon clearly would not be included on the list of Chartis' eleven specified **marine liability** categories. Tarpon's operations did not even resemble any of Chartis' eleven categories. Despite this, Chartis maintains its claim denial position based to a great extent on the words:

"...marine liability which includes, **but is not limited to**:"

In response to Chartis' flawed reasoning I offer the following based on my independent research:

1. At my request, The Insurance Library of Boston provided a random selection of marine definitions extracted from insurance technical reviews, dictionaries and glossaries in their extensive archive. Their search located no exact definition of the term 'marine liability'. However, the most closely associated definitions make reference to liability coverage for entities with true <u>maritime operations</u>. In defining marine insurance terms, various sources cite examples of true **maritime entities** similar or verbatim to the eleven Chartis lists as excluded under item **B.** of its MLLE form (i.e. – Ship Repairers, Stevedores, Wharfingers, Terminal Operators, et al). (<u>www.insurancelibrary.org</u>; Exhibit G)

2. On the AIMU website I reviewed the coverage forms most commonly used to insure maritime operations for their exposure to 'marine liabilities'. Exhibit E includes a copy of the 'American Institute EXCESS <u>MARINE LIABILITIES</u> CLAUSES' coverage form used to insure '<u>maritime operations</u>' for their <u>MARINE LIABILITIES</u> exposure. It is significant that this coverage form is specifically tailored to cover numerous of the maritime categories Chartis lists as 'marine liability' in its MLLE. AIMU's <u>MARINE LIABILITIES</u> CLAUSES form is customized for marine liability exposures such as Protection and Indemnity Liability, Towers Liability, Ship Repairers Legal Liability and Wharfingers Liability.

   (Exhibit E)

3. A review of the Chartis website's 'Marine' section as well as the websites of leading marine market carriers Chubb and ACE is very informative. Chartis' website confirms that Chartis is indeed a **maritime** market for primary as well as excess marine liability insurance (i.e. - Protection and Indemnity). In this dispute, Tarpon is not a **maritime** operation. Under **Marine Liability Insurance** Chartis' website makes no mention of vicarious liability for non-owned boat exposures as contemplated by ISO CGL forms, but instead clarifies that:

   "**<u>Marine Liability Insurance</u> tailors a wide-range of liability coverages <u>for the unique needs of transportation and facility operators.</u>**

   Available coverage includes: **Stevedore's** Liability, Wharfinger's Liability, **Terminal Operator's** Liability, **Ship Repairer's** Liability, **Charterer's** Liability, **Excess Marine Liabilities**, Bumbershoot"

As an oilfield equipment rental company, neither Chartis nor the insurance industry at large would consider Tarpon to be a maritime "transportation or facility operator." Nor would Tarpon be understood in the insurance industry as a maritime operation having 'marine liability' exposures. Thus the reason we find Tarpon's CGL and CUL written on ISO and/or ISO-based liability forms. These ISO forms contain <u>policy language oriented primarily towards land-based</u>

operations.   By contrast, AIMU (and ILU) forms are customized with the <u>language and terminology peculiar to marine liabilities</u> and tailored to maritime operations such as maritime transportation and facility operators.   Chartis' website also provides a multitude of **<u>Marine Liability Insurance</u>** applications, <u>none of which reference non-owned boat liability</u> as found within ISO's exception for watercraft less than 26 feet.

(Exhibit H)


## Conclusion

Among insurance industry professionals, the term 'Marine Liability' is understood as making reference to 'Maritime Operations'.   The maritime insurance industry has its own custom forms which use language contemplating liabilities arising from true marine operations.

Based on the above analysis, Tarpon is covered for the incident of 5-20-09.   Chartis should take actions to coordinate with FMIC in defense of the claim and acknowledge its responsibility for paying any eventual award of damages.

Commentary herein is based on my initial review of case documents provided thus far.   My opinions could change based on new information or information not yet presented to me.   Thus I reserve the right to amend or supplement the opinions expressed herein.

My review is ongoing and I am available to supplement this report upon request.


Respectfully submitted,

Burl Daniel, CPCU, CIC, CRM

| EXHIBIT A |
|-----------|

## Curriculum Vitae

**Burl Daniel, CPCU, CIC, CRM**
3417 Hulen, Suite 104  Fort Worth, TX  76107-6125
(817) 980 4897 / FAX (817) 887 5231
burl@burldaniel.com  www.burldaniel.com

<u>**Professional Designations:**</u>
**2001 CRM -** Certified Risk Manager:  www.scic.com
**1993 CIC -** Certified Insurance Counselor:  www.scic.com
**1989 CPCU -** Chartered Property Casualty Underwriter:  www.aicpcu.org

<u>**Insurance Experience:**</u>
**2004-**     President, Burl Daniel Associates.   Property & Casualty Insurance Expert Witness engaged by Defense & Plaintiff counsel.  Professional services include providing analysis and commentary, issuing Insurance Expert Reports, deposition and court testimony.

**2001-04** Senior Vice President, Frost Insurance Agency, Fort Worth, TX.  Responsible for insurance sales & service to clients.  Frost is a top 100 national and regional insurance agency.

**1988-2001** Principal, Milrany Scott/AIS Insurance, Fort Worth, TX.  Duties included carrier negotiations, employee management, sales and service to insurance clients.  Responsibilities included claims negotiation & acquisition of insurance agencies.

**1985-87** Board of Directors:  Independent Insurance Agents of Tarrant County

**1984-88** Principal: Burl Daniel General Insurance, Fort Worth, TX. Duties included insurance account sales, service, and claims assistance for Personal Lines, Commercial Lines, Life Insurance, and Employee Benefits.

**1979-84** Principal: Dickerson-Llewellyn Agency, Fort Worth, TX. Duties involved sales and service to clientele in Personal Lines Insurance, Commercial Insurance, Life Insurance, and Employee Benefits. Integrated several books of insurance customers acquired by agency.

**1976-79** World travel included Europe, Middle East, Asia, Australia, and South America.

**1975-76** Assistant Insurance and Risk Manager, Gulf States Utilities, Beaumont, TX.  Gulf States was the primary electric utility between Conroe, TX & Baton Rouge, LA. Responsibilities included managing self-insurance & large deductible insurance programs for Property Insurance, Boiler & Machinery, Commercial Auto, Commercial General Liability, Commercial Umbrella & Workers Compensation.

**Professional Education and Licenses:**

**2006-07** Adjunct Professor of Insurance and Risk Management - University of North Texas Certified Financial Planner Program

**1984** Tarrant County College- Insurance Lecturer, INS 21 courses

**1981-83** Adjunct Professor of Insurance - University of Texas Arlington College of Business

**1975** Bachelor of Business Administration, Insurance - University of Texas Austin   Curriculum included Insurance Principles, Property & Casualty, Risk Management, Actuarial Analysis, Life Insurance, Accounting & Finance.

Property-Casualty & Risk Manager Licenses (Texas)

**Expert Profile:**

Entered insurance industry 1973 - Insurance agency principal for 24 years - Provided insurance advice to clients for all lines of their entire Property & Casualty insurance programs. Expertise includes insurance bad faith, policy design, portfolio review, claims negotiation, premium audits, contract analysis, and risk management.

**Areas of Expertise:**

| | |
|---|---|
| Insurance Agent Error & Omission | Insurance Bad Faith |
| Commercial General Liability | Products Liability Insurance |
| Commercial Auto Insurance | Commercial Umbrella Insurance |
| Professional Liability Insurance | Workers Compensation |
| Property Insurance Expert | Business Interruption Insurance |
| Flood Insurance | Inland & Ocean Marine Insurance |
| Directors and Officers Liability | Crime Insurance |
| Employment Practices Liability | Surplus Lines Insurance |
| Personal Auto | Homeowners Insurance |
| Personal Umbrella | |

**Representative clients:**

- Manufacturing
- Distribution
- Contractors - General & Artisan
- Non -profit organizations
- Oil jobbers

- Truckers
- Service companies
- Insurance companies
- Banks
- Importers - Exporters

- 2 -

EXHIBIT B

<u>PUBLICATIONS WITHIN THE PRECEDING TEN YEARS,</u>

Burl Daniel, *Litigation Support: Maximizing Value from your Consultant*, The RHA Review, v. 12, No. 2, 1st Quarter 2006. See "Archives" at  www.roberthughes.com

Burl Daniel, *Hiring Insurance Expert Witnesses: Get Your Money's Worth* see: http://expertpages.com/news/expert_witnesses_get_your_moneys_worth.htm, also linked from the resources main page: http://expertpages.com/using.htm


<u>TESTIMONY WITHIN THE PRECEDING FOUR YEARS</u>

Deposed December 2011:  Olin Chlor Alkali Products v. Continental Casualty, et al, Case No. 2:10-cv-00625-GMN-RJJ in United States District Court for the District of Nevada..

Deposed September 2011:  Factory Sales and Engineering, Inc. and Valbar, Inc. v. Ellsworth Corporation, et al; Cause 2007-15870 In The 22nd District Court for The Parish of St. Tammany, State of Louisiana; Division "D".

Deposed July 2011:  Majestic Flowers and Gifts v. State Auto Insurance; Cause No. 37309 In the 82nd Judicial District Court of Falls County, Texas.

Court Testimony May 2011, Deposed October 2009:  McCullough v. Woods Insurance Agency, et al; Cause No. 2008-1550-1 In the State of New Mexico, County of San Juan; Eleventh Judicial District.

Deposed April 2011:  MWR Contractors, LLC v. Becker Lassen Insurance Agency; Cause No. 09MG-CC00093 In the Circuit Court of Morgan County, Missouri at Versailles.

Deposed January 2011:  Hometex Corporation v. Joe W. McMullan Insurance Agency, Inc., et al; Cause No. BA-CV-05-00012 in The 216th Judicial District Court, Bandera County, Texas.

Deposed December 2010:   Construction Services Bryant, Inc. v. The Cincinnati Insurance Company, et al; Cause No. 09 CV 3137 In the Eighteenth Judicial District Court, Sedgwick County, Kansas, Civil Department.

Deposed June 2010:  Mick White Renovations, Inc. v. John Ericson, et al; Cause No. 09CV02310 In the Johnson County Judicial District, Kansas.

Deposed May 2010:  Cantor v. Farmers Insurance, et al.; Cause No. CV2008-052618 In the Superior Court of the State of Arizona, County of Maricopa.

Deposed April 2010:  Creative Young Minds, Ltd., et al v. Hibbs Hallmark, et al; Cause No. 048-23087-09 In the 48th Judicial District Court of Tarrant County, Texas.

Deposed January 2010:  Elizondo v. American International Group, et al; Cause No. 07-62262-1 In the County Court at Law No. 1, Nueces County, Texas.

Court Testimony November 2008, Deposed November 2006:   ECF North Ridge Associates, LP, et al v. ORIX Capital Markets, LLC; Cause No. 04-7956-G In the 134th Judicial District Court Dallas County, Texas.

Court testimony June 2008, Deposed January 2007:   REO Engineers & Surveyors, Limited vs. Zurich American Insurance Co., RN Jones Agency, Inc. & Sidney Brown. Cause No. C-1739-01-CA (Severed cause), in The 139th Judicial District Court, Hidalgo County, Texas.

Deposed April 2008:   Roy Anderson Corporation v. Sawyer-Foster Insurance Company; Cause No. A2401-07-215 in the Circuit Court Harrison County Mississippi, First Judicial District.

Deposed July 2007:  Laurence E. Best v. Independent Insurance Associates, et al; Cause No. 06-1130, Section "C" United States District Court, Eastern District of Louisiana; Magistrate 5; Remanded to Civil District Court for the Parish of Orleans, State of Louisiana;  Cause No. 05-13441, Division "H", Docket No. 12.

Deposed June 2007:   Dyer Investment Company, LLC v. Marsh & McLennan Companies, Inc., et al; Cause No. 05CV2812-D/P in US District Court of Tennessee Western Division.

Deposed March 2007:  Le Petomane, Inc. v. J. Brian Hittinger; Cause No. 2:98-CV-00012 In the US District Court Northern District of Indiana.

EXHIBIT C

# DOCUMENTS LOG

CASE NAME: Antill Pipeline v. Chartis

| Date Received | Description | Received From |
|---|---|---|
| 7/5/2012 | 1.  Video<br>2.  5 CDs of Photos<br>3.  05.21.12 Chartis Policy and MSJ<br>4.  Documents Folder<br>   -  Antill's Complaint<br>   -  Blood Samples<br>   -  Toxicology Report<br>   -  Coast Guard FOIA Resp<br>   -  Corps of engineers response<br>   -  Golf records<br>   -  Bridge Opening Log<br>   -  LDW Incident Reports<br>   -  Locations of blood samples taken<br>   -  Memo from 8th Dist Coast Guard Commander<br>   -  USACE Response to FOIA req<br>   -  Vessel Logs<br>   -  Wildlife & Fisheries Report<br>   -  Engine data sent to client<br>5.  Policies Folder<br>   -  Tarpon Insurance Policies Folder (Multiple Policies)<br>   -  AIG Excess for Tarpon<br>   -  Gray Excess CGL<br>   -  Gray Excess Liability Cov<br>   -  Houma Responses<br>   -  Response from State Farm<br>   -  State Farm Application<br>   -  State Farm Policy<br>   -  XL Insurance Excess<br>6.  Depositions of Alford, Antill Sr, Antill, Aucoin, Bangs, Bergeronm Caro, Cenac, Champagne, Clements, Comardelle, Detiveaux, Dupre, Gauthreaux, Hebert, Long, McElroy, Moreau, Prejean, Ramsey, Wheeler | Marilyn Linscheid |

*Document Tracking Log* – Page 1 of 2

| 7-9-12 | Signed Engagement letter | Marilyn Linscheid |
|--------|--------------------------|-------------------|
| 7-12-12 | Voss:  Ans to Complt, Clms & Ans to Complt;   Carrere: Ans to Complt, Clms & Ans to Complt; Meche: Ans to Complt; Flak: Clms & Ans; Gauthier: Clms & Ans | Marilyn Linscheid |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Document Tracking Log* – Page 2 of 2

EXHIBIT D

**Burl Daniel Associates**
3417 Hulen, Suite 104   Fort Worth, TX 76107-6125
burl@burldaniel.com | www.burldaniel.com
(817) 980 4897 / FAX (817) 887 5231

July 5, 2012

Mr. Robert S. Reich
Reich, Album & Plunkett, L.L.C.
Two Lakeway Center, Suite 1000
3850 N. Causeway Blvd.
Metairie, LA 70002

Re: Antill Pipeline v. Chartis; Civil Action No. 09-3646, c/w 10-2633, and c/w 11-2131
in United States District Court Section C-2 for the Eastern District of Louisiana

Mr. Reich:

On behalf of its clients, Antill Pipeline Construction Company, Inc., and its underwriters, Reich, Album & Plunkett, L.L.C. ("you") has engaged me for insurance consulting services in the referenced matter. This letter describes terms of the engagement and constitutes a valid and binding contract obligation between you and me:

1. <u>Qualifications</u>: You have investigated and verified my credentials and agree I am qualified to perform the services required for this case.

2. <u>Retainer, Fees and Expenses</u>: You agree to deposit with me a $5,000 **retainer, which will be applied to the final invoice** with any unused portion returned to you. Fees are charged for time expended by me and/or my assistants. My time is billed at $450 per hour; clerical support is billed at $85 per hour. Travel and other expenses are billed at cost. Days requiring travel, deposition, court appearance or testimony carry a minimum 8 billable hours, portal-to-portal. Costs incurred to collect past due fees and expenses, including time expended by myself and/or staff will be charged to you.

3. <u>Designation Fee</u>: During the normal course of this engagement no additional fee is incurred to designate me as your expert. However, designating me **solely to comply with any expert designation deadlines or expert disclosure requirements** incurs a $2,000 fee.

4. <u>Payment Obligation</u>: You are responsible for timely payment of all fees and expenses. **Invoices are sent via email** at each month end or other appropriate date. **Payment is due upon receipt.** Payments received more than 15 (fifteen) days from invoice date will incur a **late fee of 1.5%** per month applied daily to any past due balance until paid in full. Timely payment is not dependent upon findings I may render, outcome of any legal action, proceeding, mediation, arbitration, the amount or terms of any settlement of the referenced litigation, nor any associated or underlying legal cause. Timely payment is not dependent on any contract(s) or agreement(s) among or between you, your client, any other attorney, persons or parties. I am not obligated to seek payment from any third party. I reserve the right to require **advance payment** for future services.

Mr. Robert S. Reich
Page 2 of 2
July 5, 2012

5. Termination: If any invoice becomes past due or any invoice has been paid late I reserve the right to take any available action including but not limited to:

    a) Suspending or ceasing work on the referenced case.
    b) Requiring advance payment for future services.
    c) Not rendering any reports, declarations, or affidavits.
    d) Not testifying at deposition or trial.
    e) Terminating this agreement.

6. Venue: Jurisdiction and venue for any dispute regarding this engagement lies in Tarrant County, TX.

You designate **Robert S. Reich and Larry Plunkett** to provide information and directions to me during this engagement. You agree to inform me promptly of all dates and changes thereto affecting insurance expert work to be performed by me. This includes, by example only, dates for expert designation, expert report(s) due dates, court deadlines and scheduling orders, deposition dates, trial dates and dates agreed with opposing counsel.

You have advised me that my report and Rule 26 material is due on Friday, July 13, 2012 and that the trial of this matter is set to begin on September 24, 2012 and is expected to last two weeks. My testimony will be required in New Orleans, Louisiana at some point during that two week period.

Please contact me with any questions concerning this engagement. If this letter reflects your understanding of our agreement, please return a signed copy with your retainer check. I look forward to working with you in this matter.

Yours truly,

Burl Daniel, CPCU, CIC, CRM


Robert S. Reich, on behalf of its clients, Antill Pipeline Construction Company, Inc. and its underwriters

Agreed to and accepted July 5, 2012

http://www.aimu.org/members2.html

EXHIBIT E



# American Institute of Marine Underwriters

● Home
● Contact Us
● Join Us
● IUMI

| About AIMU | Surveyors | Regulations | Papers & Reports | Education | Forms | Statistics | Commodities | Issues Book |

# MEMBERS

## CORPORATE MEMBERS

ACE USA
Allianz Global Corporate & Specialty
Allied World Reinsurance Company
Alterra Specialty Insurance
American Hull Insurance Syndicate
Arch Insurance Co.
Aspen Specialty Insurance Company
Berkley Offshore Underwriting Managers, LLC
Catlin Insurance Company, Inc.
Century Surety Company
→ Chartis Insurance
Chubb & Son Inc.
CNA Marine
Crum & Forster Holdings Corp.
Everest Reinsurance Company
FM Global
Gen Re
Great American Insurance Group
Hanover / Citizens Insurance Group
Hartford Insurance Group
HDI - Gerling American Insurance Company
IMU/One Beacon Insurance
Ironshore Indemnity Inc.
Liberty International Underwriters
Markel American Insurance Company
Mitsui Sumitomo
Munich Reinsurance America, Inc.
National Liability & Fire Ins. Co.
Navigators Group
NIPPONKOA Insurance Co. Ltd., U.S. Branch
Ocean Marine Indemnity Company
Old United Casualty Company
Platinum Underwriters Reinsurance, Inc.
RLI Insurance Company
Scottsdale Insurance Company
Seaworthy Insurance Company
Sompo Japan Ins. Co. of America
Swiss Re
Tokio Marine & Nichido Fire Insurance Co., Ltd. (US Branch)
Transguard Insurance Co
Transatlantic Reinsurance Company
Travelers
Water Quality Insurance Syndicate
XL Reinsurance America Inc.
XL Specialty Insurance Company
Zurich American Insurance Company

## BROKERS / MGA

Aon Risk Services
Arthur J. Gallagher & Co.
Axiom Insurance Management
Blessmatch Marine Insurance Services, Inc.
Capitol Risk Concepts, Ltd.
Expeditors Cargo Insurance Brokers, Inc.
Falvey Cargo Underwriting
Fidelis Marine Underwriters LLC
G & M Marine Inc.
Frenkel & Co., Inc.
Hugh Wood, Inc.
International Bond & Marine Brokerage, Ltd
International Special Risks
International Specialty, Inc.
Marine Underwriters of America, Inc.
Maritime Program Group
Marsh Inc.
McGriff, Seibels & Williams
Mosaic Underwriting Services, Inc.
Nausch, Hogan & Murray, Inc.
Roanoke Trade Services, Inc.
The McIntyre Group
Trident Marine Managers, Inc.
Underwriting Risk Services, Inc.
UPS Capital Insurance Agency, Inc.
Willis

## CLAIMS SETTLING & SERVICES / SURVEYING

BMT Marine & Offshore Surveys
Cooper Capital Specialty Salvage, LLC
Crawford and Company
CSL North America
EIMC
Globex International Group, Inc.
Minton, Treharne & Davies (USA) Inc.
National Association of Marine Surveyors
National Cargo Bureau, Inc.
National Marine Consultants
Noble Denton
Raphael and Associates
Oceanwide, Inc.
Salvage Sale
Schenker Inc.
Shipowners Claims Bureau Inc.
The Spencer Company

AIMU - Corporate Members                                                    Page 2 of 2

**LEGAL COUNSEL**
Wiggin and Dana

VeriClaim Inc.
W. E. Cox Claims Group
W. K. Webster (Overseas) Ltd.

**LAW FIRMS**
Badiak & Will, LLP
Bullivant Houser Bailey PC
Casey & Barnett LLC
Clyde & Company US LLP
Frankfurt Kurnit Klein & Selz P.C.
Galloway Johnson Tompkins Burr & Smith
Gibson Robb & Lindh LLP
Hamilton Miller & Birthisel, LLP
Hill Betts & Nash LLP
Hill Rivkins LLP
Houck Anderson
Kennedy Lillis Schmidt & English
Locke Lord Bissell & Liddell LLP
Maginnis & Hurley
Maloof Browne & Eagan LLC
Marshall, Dennehey, Warner, Coleman & Goggin
Mendes & Mount
Mound, Cotton, Wollan & Greengrass
Nicoletti, Hornig & Sweeney
Rubin, Fiorealla & Friedman LLP
Thomas M. Grasso LLC

**REINSURANCE INTERMEDIARIES**
AonBenfield Re US
Beach Re Ltd
BMS Vision Reinsurance Intermediaries, Inc.
Guy Carpenter & Co.
Towers Watson
Willis Re Inc.

**AFFILIATE**
Board of Marine Underwriters of San Francisco, Inc.

http://www.aimu.org/members2.html                                    7/12/2012

http://www.aimu.org./aimuforms/8A.pdf

**AMERICAN INSTITUTE**                                                8A
**FOLLOWING FORM EXCESS MARINE LIABILITIES CLAUSES**
**(January 1, 2002)**

To be attached to and form part of policy No. _____ of the _____.

1.  Insures _____
    (hereinafter called the Assured) against excess liabilities of the Assured as hereinafter described and subject to the terms and conditions hereinafter set forth, in respect only of the liabilities or expenses for which a premium is shown in the following schedule:

| SECTIONS | COVERED | PREMIUM |
|---|---|---|
| (a)  Excess Protection & Indemnity | [  ] | _____ |
| (b)  Excess Collision Liability | [  ] | _____ |
| (c)  Excess Collision, Including Tower's Liability | [  ] | _____ |
| (d)  Excess General Average & Salvage | [  ] | _____ |
| (e)  Excess Sue and Labor Charges | [  ] | _____ |
| (f)  Excess Ship Repairer's Legal Liability | [  ] | _____ |
| (g)  Excess Charterer's Legal Liability | [  ] | _____ |
| (h)  Excess Wharfinger's and/or Safe Berth Liability | [  ] | _____ |
| (i)  Excess _____ | [  ] | _____ |
|  |  | _____ Total |

2.  Period:      At and from the _____ day of _____.
    To the _____ day of _____.
    Beginning and ending with _____ time.

3.  **LIMIT OF LIABILITY**

    Regardless of the number or types of liabilities insured against hereunder, or the number of vessels or risks involved, these Underwriters shall not be liable under this Policy for more than _____ any one accident or series of accidents arising out of the same event, but in no event shall the liability of these Underwriters under any individual section of this Policy exceed the limit of liability scheduled for that section in Column "A" below for any accident or series of accidents arising out of the same event.

**EXCESS PROTECTION AND INDEMNITY**

(a)  These Underwriters agree to indemnify the Assured for all liability, loss, damage or expense insured against under the Protection and Indemnity policies described in the Schedule of Underlying Insurances (hereinafter referred to in this Section and in the General Conditions as the "Primary Policies"); but this insurance is warranted free from claim hereunder unless such liability in respect of the same accident or occurrence, if the limits of liability of the primary policies are written on an occurrence basis) exceeds the Limits of Liability of the Primary Policies in which event these Underwriters shall be liable only for the amount by which such liability exceeds such underlying Limits of Liability, but in no event for more than the Limit of Liability of this insurance.

**EXCESS COLLISION**

(b)  These Underwriters agree to indemnify the Assured for sums not recoverable in full by the Assured under the Collision Clause of the policies on Hull and Machinery (including Increased Value with excess liabilities, if any, or under any other policies insuring collision liability) described in the Schedule of Underlying Insurances (hereinafter referred to in this Section and in the General Conditions as the "Primary Policies"), by reason of the Assured's collision liability exceeding the amount insured against collision liability as stated in the Primary Policies, but in no event for more than the Limit of Liability of this insurance.

**EXCESS COLLISION INCLUDING TOWER'S LIABILITY**

(c) These Underwriters agree to indemnify the Assured for sums not recoverable in full by the Assured under the Collision Clause incorporating tower's liability of the policies on Hull and Machinery (including Increased Value with excess liabilities, if any, or under any other policies insuring collision and tower's liability) described in the Schedule of Underlying Insurances (hereinafter referred to in this Section and in the General Conditions as the "Primary Policies"), by reason of the Assured's collision and /or tower's liability exceeding the amounts insured against collision and tower's liability as stated in the Primary Policies, but in no event for more than the Limit of Liability of this insurance.  These Underwriters shall not be required to indemnify the Assured under Section (b) of this Policy with respect to any vessel insured under this Section (c).

## EXCESS GENERAL AVERAGE AND SALVAGE

(d) These Underwriters agree to indemnify the Assured for General Average and Salvage not recoverable in full by the Assured under the policies on Hull and Machinery (including Increased Value with excess liabilities, if any), described in the Schedule of Underlying Insurances  (hereinafter referred to in this Section and in the General Conditions as the "Primary Policies"), by reason of the difference between the insured value of the vessel as stated in the Primary Policies for any reduced value arising from the deduction therefrom in the process of adjustment of any claim (which law or practice or the terms of the Primary Policies may have required) and the value of the vessel adopted for the purpose of contribution to General Average or Salvage charges, the liability under this Policy being such proportion of the amount not recoverable as the Limit of Liability of this insurance bears to the said difference or to the total sum insured against excess liabilities if it exceeds such difference, but in no event for more than the Limit of Liability of this insurance.

## EXCESS SUE AND LABOR CHARGES

(e) These Underwriters agree to indemnify the Assured for Sue and Labor charges not recoverable in full by the Assured under the policies on Hull and Machinery (including Increased Value with excess liabilities, if any) described in the Schedule of Underlying Insurances (hereinafter referred to in this Section and in the General Conditions as the "Primary Policies"), by reason of the difference between the insured value of the vessel as stated in the Primary Policies for any reduced value arising from the deduction therefrom in the process of adjustment of any claim (which law or practice or the terms of the Primary Policies may have required) and the value of the vessel adopted for the purpose of ascertaining the amounts recoverable under the policies on Hull and Machinery (including Increased Value with excess liabilities, if any), the liability under this Policy being such proportion of the amount not recoverable as the Limit of Liability of this insurance bears to the said difference or to the total sum insured against excess liabilities if it exceeds such difference, but in no event for more than the Limit of Liability of this insurance.

## EXCESS SHIP REPAIRER'S LEGAL LIABILITY

(f) These Underwriters agree to indemnify the Assured for all liability, loss, damage or expense insured against under the Ship Repairer's Legal Liability policies described in the Schedule of Underlying Insurances (hereinafter referred to in this Section and in the General Conditions as the "Primary Policies"), but this insurance is warranted free from claim hereunder unless such liability in respect of the same accident (or occurrence if the Limits of Liability of the Primary Policies are written on an occurrence basis) exceeds the Limits of Liability of the Primary Policies in which event these Underwriters shall be liable only for the amount by which such liability exceeds such underlying Limits of Liability, but in no event for more than the Limit of Liability of this insurance.

## EXCESS CHARTERER'S LEGAL LIABILITY

(g) These Underwriters agree to indemnify the Assured for all liability, loss, damage or expense insured against under the Charterer's Legal Liability policies described in the Schedule of Underlying Insurances (hereinafter referred to in this Section and in the General Conditions as the "Primary Policies"), but this insurance is warranted free from claim hereunder unless such liability in respect of the same accident (or occurrence if the Limits of Liability of the Primary Policies are written on an occurrence basis) exceeds the Limits of Liability of the Primary Policies in which event these Underwriters shall be liable only for the amount by which such liability exceeds such underlying Limits of Liability, but in no event for more than the Limit of Liability of this insurance.

## EXCESS WHARFINGER'S AND/OR SAFE BERTH LIABILITY

(h)   These Underwriters agree to indemnify the Assured for all liability, loss, damage or expense insured against under the Wharfinger's and/or Safe Berth Liability policies described in the Schedule of Underlying Insurances (hereinafter referred to in this Section and in the General Conditions as the "Primary Policies"), but this insurance is warranted free from claim hereunder unless such liability in respect of the same accident (or occurrence if the Limits of Liability of the Primary Policies are written on an occurrence basis) exceeds the Limits of Liability of the Primary Policies in which event these Underwriters shall be liable only for the amount by which such liability exceeds such underlying Limits of Liability, but in no event for more than the Limit of Liability of this insurance.

**EXCESS** _____

(i)   These Underwriters agree to indemnify the Assured for all liability, loss, damage or expense insured against under the _____ policies described in the Schedule of Underlying Insurances (hereinafter referred to in this Section and in the General Conditions as the "Primary Policies"), but this insurance is warranted free from claim hereunder unless such liability in respect of the same accident (or occurrence if the Limits of Liability of the Primary Policies are written on an occurrence basis) exceeds the Limits of Liability of the Primary Policies in which event these Underwriters shall be liable only for the amount by which such liability exceeds such underlying Limits of Liability, but in no event for more than the Limit of Liability of this insurance.

### GENERAL CONDITIONS

4.   These Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured, but these Underwriters shall have the right and shall be given the opportunity (without incurring any liability for costs or expenses thereof except as hereinafter provided) to associate with the Assured or the underwriters on the Primary Policies, or both, in defense and control of any claim, suit or proceeding which involves or appears likely to involve these Underwriters, in which event the Assured, the underwriters on the Primary Policies and these Underwriters shall cooperate in all matters in defense of such claim, suit or proceeding.

5.   In the event the Assured or the Underwriters on the Primary Policies elect not to appeal a judgement in excess of the Limits of Liability as stated in the Primary Policies, these Underwriters may elect to make such an appeal at their sole cost and expense and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of these Underwriters exceed the Limit of Liability of this insurance plus the cost and expense of any such appeal.

6.   In the case of any payment made hereunder, these Underwriters may act together with all other interests (including the Assured) in the exercise of any rights of recovery against third parties with respect to the loss paid by the Assured, Underwriters on the Primary Policies and these Underwriters.  The apportionment of any amounts which may be recovered from third parties shall follow the principle that any interest (including that of the Assured) that shall have paid an amount over and above any payment made hereunder by these Underwriters shall first be reimbursed up to the amount paid thereby; ~~these Underwriters will then be reimbursed out of any balance remaining up to the amount paid thereby and hereunder;~~ finally, the interests (including that of the Assured) of whom this Policy is in excess are entitled to claim the balance, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the proportion that their respective recoveries are finally settled.

7.   It is a condition of this insurance that all Primary Policies, in which the Assured has an interest, are scheduled and that the said Primary Policies shall be maintained in full force and effect during the term of this Policy and that no changes shall be made in the Primary Policies which broaden the insuring conditions thereof or reduce the amounts collectible thereunder.  In the event there is no recovery available to the Assured under the Primary Policies, whether as a result of the bankruptcy or insolvency of the underwriters or any of them of the Primary Policies or otherwise, the coverage hereunder shall nonetheless apply only in excess of the applicable Limit of Liability specified in the Primary Policies.  In the event of a breach of any of the aforesaid conditions this Policy shall be null and void, unless otherwise agreed in writing by these Underwriters.  These Underwriters shall be furnished with copies of the Primary Policies and any amendments thereto at their request.

8.   The term "Assured" is used severally and not collectively, but the inclusion herein of more than one Assured shall not operate to increase the liability of these Underwriters.

9.  The Assured, upon knowledge of any occurrence likely to give rise to a claim hereunder, shall give prompt written or electronic notice thereof to these Underwriters.

10. Either these Underwriters or the Assured may cancel this insurance by giving the other thirty (30) days written notice, after which this Policy shall be of no force or effect.  In the event of non-payment of premium 30 days after attachment, or of any additional premium when due, this insurance may be cancelled by Underwriters upon ten (10) days written notice, after which this Policy shall be of no force or effect.  Written or telegraphic notice sent to the Assured at its last known address shall constitute complete notice of cancellation.  Such notice sent to the Assured in care of the broker who negotiated this Policy shall have the same effect as if sent directly to the Assured.   If cancellation is at the Assured's option, the Underwriters will retain earned premium hereunder as per customary short rate table; if cancellation is at the Underwriters' option, pro rata unearned premium will be returned as soon as practicable.  All returns shall be net.

11. This insurance shall cover only those excess liabilities specified in paragraph 1, for not exceeding the amounts specified under Limit of Liability in Column "A" below, being excess of Primary Limits specified in Column "B" below, but subject to the terms and conditions otherwise specified herein.


The listing below of Primary Policies which include risks not otherwise insured against under this Policy shall not be deemed to be an acceptance by these Underwriters as protection against such risks, nor shall the Assured recover from these Underwriters any deductible or self-insured retention under any Primary Policies.

## SCHEDULE OF INSURANCES

| Location or Vessel | Section(s) Applicable | Column "A" Excess Limit of Liability | Column "B" Primary Limit of Liability |
|---|---|---|---|
| | | | |
| | | | |



## Forms Listed by Form Name
### (All forms in PDF format unless another format is indicated)

| Form Name | Form # |
|---|---|
| AHAB FORM | SP-33A |
| | |
| BUILDER'S RISK CLAUSES (1973) | 13-K |
| BUILDER'S RISK CLAUSES (1979) | 13-L |
|    ADDENDUM #1 | 13L-1 |
|     PRE-KEEL ENDORSEMENT | 13B-2 |
|     TOTAL LOSS ENDORSEMENT | 13K-1 |
| BUILDERS RISK PROTECTION AND INDEMNITY ENDORSEMENT | 13A-1 |
| BULK OIL CLAUSES | SP-13C |
| BULK LIQUIDS – AVERAGE CLAUSE | 14 |
| | |
| CARGO CLAUSES (1949) | 32B-8 |
| CARGO CLAUSES (1966) | 32B-10 |
| CARGO POLICY | 15 |
| CHARTERER'S LEGAL LIABILITY (ANNUAL BASIS) | SP-43A |
| CHARTERER'S LEGAL LIABILITY (SINGLE VOYAGE) | SP-42A |
| CLASSIFICATION CLAUSE | |
| COAL SHIPMENTS | 88-A |
| COASTWISE & INLAND HULL CLAUSES | 27 |
| COLLISION CLAUSES | |
|     FOUR FOURTHS INCLUDING TOW | 143-B |
|     FULL COVERAGE | 143 |
|     INCLUDING TOW AND EXTENDED TOWER'S LIABILITY | 143-D |
|     INCLUDING TOWER'S LIABILITY | 63 |
| | |
| DEFERRED PREMIUM (1970) | SP-200 |
| DEFERRED PREMIUM (1981) | SP-201 |
| DELIBERATE DAMAGE – POLLUTION HAZARD (CARGO) | 87B-107A |
| DELIBERATE DAMAGE – POLLUTION HAZARD (HULL) | 6Z-4 |
| DRYDOCK POLICY | 107 |
| DUTY (CLAUSES COVERING) | 33 |
| DUTY AND/OR INTERNAL REVENUE TAX (CLAUSES COVERING) | 34 |
| | |
| ENDORSEMENT (BLANK) | 102 |
| EXCESS MARINE LIABILITIES (NOV. 3, 1977) | 8-A |
| EXCESS MARINE LIABILITIES (JAN. 1, 2002) | 8-A |
| | |
| F C & S | |
|     CLAUSE (HULL) | 87B-59 |
|     WARRANTY FOR CERTIFICATES OR SPECIAL POLICIES | 87B-78 |
|     WARRANTY FOR OPEN POLICY CARGO | 87B-109A |
| | |
| GRAIN LOADING WARRANTY | 278-B |

Case 2:09-cv-03646-HGB-JCW   Document 591-7   Filed 07/17/12   Page 24 of 53

| HULL CLAUSES | 7 |
|---|---|
| HULL CLAUSES (SEPTEMBER 29, 2009) | |
| HULL WAR RISK & STRIKE CLAUSES (December 1, 1977) | 87B-108 |
|    ADDENDUM #1 (HULL SYNDICATE – 10/1/83) | SP-108A |
|    ADDENDUM #2 (HULL SYNDICATE – 10/1/83) | SP-108B |
|    ADDENDUM (HULL SYDICATE – 4/1/84) | SP-108C |
|    THREE-FOURTHS COLLISION LIABILITY CLAUSE - FOR ATTACHMENT TO AMERICAN INSTITUTE HULL CLAUSES (1977) | SP-133 |
| HULL WAR RISK & STRIKES CLAUSES (SEPTEMBER 29, 2009) | 87C-108 |
| | |
| INCHMAREE CLAUSE | 65-C |
| INCREASED VALUE & EXCESS LIABILITIES CLAUSES | 129-P |
| | |
| JOINT POLICY | SP-36 |
| | |
| LAKES HULL CLAUSES | 47V-14 |
| LAKES INCREASED VALUE AND EXCESS LIABILITIES | 46K-13 |
| LAKES PROTECTION & INDEMNITY | 60A-74 |
|    INSURING CLAUSE "J" | 60A-70 |
|    MISCELLANEOUS VESSELS ENDORSEMENT | 60A-76 |
|    PASSENGER VESSELS ENDORSEMENT | 60A-75 |
|    TOWAGE ENDORSEMENT | 60A-62 |
| LANDING DOCK BAILEE LIABILITY | |
| LEADING UNDERWRITER(S) ENDORSEMENT (CLAIMS ONLY) (SEPTEMBER 29, 2009) | SP-44A |
| LINER NEGLIGENCE CLAUSE | SP-7 |
| LOSS OF CHARTER HIRE FORM | SP-40B |
| LOSS RECORD – COASTWISE, GREAT LAKES & INLAND HULL | SP-16 |
| LOSS CERTIFICATE RECEIPT | 93 |
| LOST POLICY RECEIPT | 94 |
| | |
| MARINE EXTENSION (OPEN POLICY – 1943) | 87B-48 |
| MARINE EXTENSION (OPEN POLICY – 1952) | 87B-60 |
| MARINE EXTENSION (SPECIAL RISK – 1943) | 87B-49 |
| MARINE EXTENSION (SPECIAL RISK – 1952) | 87B-61 |
| MISCELLANEOUS VESSEL FORM | SP-12B |
| MISSING VESSEL CLAUSE | SPL-301 |
| MORTGAGEE FORM (MARAD TITLE XI) | 11 |
| MORTGAGEE FORM (SINGLE INTEREST) | 12 |
| | |
| NET-CLAUSE | |
| NUCLEAR EXCLUSION CLAUSE | 151 |
| NUCLEAR EXCLUSION CLAUSE (CARGO) | 151-C |
| | |
| PHILIPPINE SHIPMENTS | SP-18 |
| POLLUTION EXCLUSION CLAUSE (LIABILITIES) | 24-A |
| POLLUTION EXCLUSION CLAUSE (P & I) & BUYBACK ENDORSEMENT A | 25 |
| POLLUTION EXCLUSION CLAUSE (P & I) & BUYBACK ENDORSEMENT A (5/9/11) | 26 |
| POLLUTION EXCLUSION ENDORSEMENT | 307 |
| PORT RISK ENDORSEMENT | 57A-5 |
| PORT INSURANCE | 57-D |
| PORT RISK PROTECTION AND INDEMNITY ENDORSEMENT | 57-C |
| PREMIUM RECORD (5 YEAR) COASTWISE, GREAT LAKES AND INLAND HULL | SP-17 |
| PROTECTION AND INDEMNITY CLAUSES | |
|    AIMU - 6/2/83 | 23 |
|    CARGO LIABILITY ENDORSEMENT | 23-A |
|    INLAND VESSELS | SP-14 |

| | |
|---|---|
| P & I 1955 | SP-38 |
| REVISED 1/56 (OCEAN) | SP-23 |
| | |
| REACTIVATION ENDORSEMENT | SP-155 |
| RETURN PREMIUMS | 3 |
| RETURN PREMIUMS CLAIM (FOR LAYUP) | 3-A |
| RIVER CARGO | 85-B |
| | |
| SHIP REPAIRER'S LIABILITY CLAUSES | 9 |
| SOUTH AMERICAN 60 DAY CLAUSES (OPEN POLICY) | SP-11A |
| SOUTH AMERICAN SHIPMENTS | SP-10A |
| STEEL TRAWLER FORM | 98-B |
| STORAGE RISKS | 87B-95 |
| S R & C C | |
| ENDORSEMENT (CERTIFICATE OR SPECIAL POLICY – CARGO) | 87B-85 |
| ENDORSEMENT (HULLS) | 87B-46 |
| ENDORSEMENT (OPEN CARGO POLICY) (APR. 3, 1980) | 87B-109B |
| ENDORSEMENT (OPEN CARGO POLICY) (DEC. 2, 1993) | 10 |
| ENDORSEMENT (OPEN CARGO POLICY) (MAR. 1, 2002) | 11 |
| ENDORSEMENT (OPEN CARGO POLICY) TRIA FORM  (FEB. 1, 2003) | 11A |
| ENDORSEMENT (OPEN CARGO POLICY) TRIA FORM (JAN. 1, 2008) | 12 |
| ENDORSEMENT (OPEN CARGO POLICY) TRIA FORM (JAN. 1, 2008) | 12A |
| WARRANTY (OPEN POLICY CARGO) | 87B-109C |
| STRIKES, RIOTS, MALICIOUS MISCHIEF, VANDALISM ETC. ENDORSEMENT | SP-24 |
| SUE AND LABOR CLAUSE (HULL) | 6Z-5 |
| | |
| TAYLOR POLICY | SP-39C |
| COLLISION CLAUSE | SP-39D |
| THEFT REPORTING ENDORSEMENT (CARGO) | 87B-111 |
| TIME CLAUSE (HULLS – EXCESS LIABILITIES) | 6-X |
| TIMBER TRADE FEDERATION OF THE UNITED KINGDOM PLYWOOD INSURANCE CLAUSE | SP-8 |
| TOTAL LOSS ENDORSEMENT (HULL) | 6Z-3 |
| TRADE WARRANTIES | 38-J |
| TUG FORM | 53R-1 |
| IN PERSONAM LIABILITY ENDORSEMENT | 53-V |
| TOWER'S LIABILITY TO SISTER SHIP ENDORSEMENT | 53R-2 |
| VESSEL – FIRE ONLY | SP-30 |
| VOYAGE FREIGHTS | SP-37 |
| | |
| WAR RISK | |
| ENDORSEMENT (COMBINED CLAUSES) – CARGO | 87B-88 |
| INSURANCE (CARGO CERTIFICATE OR SPECIAL POLICY) | 87B-106 |
| OPEN POLICY (CARGO) (1981) | 87B-110 |
| OPEN POLICY (CARGO) (1993) | 87B-110 |
| OPEN POLICY (CARGO) - LIMIT OF LIABILITY ENDORSEMENT (FORM A) | 87B-110A |
| OPEN POLICY (CARGO) - LIMIT OF LIABILITY ENDORSEMENT (FORM B) | 87B-110B |
| PROTECTION AND INDEMNITY CLAUSES | SP-22B |
| | |
| YACHT FORMS | |
| FIRE ONLY | SP-28 |
| F C & S CLAUSE | 77-P |
| LONGSHOREMEN'S AND HARBORWORKER'S COMPENSATION INSURANCE | 77-R |
| MEDICAL PAYMENTS INSURANCE | 77-S |
| PROTECTION AND INDEMNITY INSURANCE | 77-Q |

**FORMS WITHOUT FORM NUMBERS :**
**(Click on form name to display)**

AIMU  CLASSIFICATION CLAUSE

CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC EXCLUSION
CLAUSE (MARCH 1, 2003)
A.  THE FORM (html format)      B. BACKGROUND EXPLANATION

EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE WITH U.S.A.
ENDORSEMENT (MARCH 1, 2003)
A.  THE FOR (html format)    B.  BACKGROUND EXPLANATION

U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE
A.  THE FORM (html format)       B.  BACKGROUND EXPLANATION

AIMU CARGO CLAUSES 2004  JANUARY 1, 2004  (ALL DOCUMENTS IN PDF FORMAT)
A.  THE FORMS
       1.  FPAAC - AMERICAN CONDITIONS
       2.  FPAEC  - ENGLISH CONDITIONS
       3.  WITH AVERAGE
       4.  ALL RISKS
B.  BACKGROUND EXPLANATION
C.  COMPARISON BETWEEN 1966 AND 2004 CARGO CLAUSES

LANDING DOCK BAILEE LIABILITY

NET – CLAUSE

EXHIBIT F



**AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE COMPANY**

A Capital Stock Insurance Company
70 Pine Street
New York, NY 10270

## NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.

**Umbrella Prime®
Commercial Umbrella Liability Policy With CrisisResponse®**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **insured** means any person or organization qualifying as such under Section VII, Definitions.

Except for headings, words that appear in bold print have special meaning. See Section VII. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

| I. INSURING AGREEMENT — COMMERCIAL UMBRELLA LIABILITY |

A. We will pay **on behalf of the insured** those sums in excess of the **Retained Limit** that the **insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage to which this insurance** applies assumed by the **insured** under an **Insured Contract.**

The amount we will pay for damages is limited as described in Section IV, Limits of Insurance.

B. This policy applies, only if:

1. the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2. the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C. 1. This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

81070 (6/07)
AH2008

Page 1 of 26
© 2001 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

L.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M.  We will not make any payment under this policy unless and until:

1.  the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss to which this policy applies and any applicable, Other Insurance have been exhausted by the payment of Loss; or

2.  the total applicable Self-Insured Retention has been satisfied by the payment of Loss to which this policy applies.

When the amount of Loss has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the Insured the amount of such Loss falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

V.  EXCLUSIONS

> Deleted entirely by Endorsement 15:
> 'Marine Liability Limitation Endorsement'

A.  Aircraft and Watercraft

This insurance does not apply to Bodily Injury or Property Damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any Insured.

This exclusion does not apply to a watercraft you do not own that is:

1.  less than 26 feet long; and

2.  not being used to carry persons or property for a charge.

B.  Asbestos

This insurance does not apply to any liability arising out of:

1.  the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2.  any obligation of the Insured to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust or

3.  any obligation to defend any Suit or claim against the Insured that seeks damages if such Suit or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

C.  Contractual Liability

This insurance does not apply to any liability for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

ENDORSEMENT No. 15

This endorsement, effective 12:01 AM: May 24, 2008

Forms a part of policy no: BE   7813156

Issued to: TARPON RENTALS INC

By: AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

Commercial Umbrella Liability Policy with CrisisResponse®

Marine Liability Limitation Endorsement
(Limited Exception for Marine Employer's Liability)

This policy is amended as follows:

A. Solely as respects watercraft, Section V. Exclusions, Paragraph A. is deleted in its   entirety.

> Does not substitute for 'watercraft' language but is added to Exclusions in general.

B. Section V. Exclusions is amended to include the following additional exclusion:

Marine

This insurance does not apply to any marine liability which includes, but is not limited to, the following:

| | |
|---|---|
| Charterers Liability | Protection and Indemnity Liability |
| Safe Berth Legal Liability | Ship Builders Liability |
| Towers Liability | Stevedores Liability |
| Ship Repairers Legal Liability | Wharfingers Liability |
| Terminal Operation Liability | U.S. Longshoreman and Harbor Workers |
| Jones Act | |

However, if a Marine Employer's Liability Coverage endorsement is attached to this policy, this exclusion shall not apply to liability for which coverage is afforded under such Marine Employer's Liability Coverage endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (in States Where Applicable)

91006 (5/06)
AH1922

EXHIBIT G

THE INSURANCE LIBRARY
156 STATE STREET
BOSTON, MA 02109

# Ocean Marine Insurance

## Volume I

**ARTHUR L. FLITNER, CPCU**
*Director of Curriculum*
*Insurance Institute of America*

**ARTHUR E. BRUNCK**
*Marine Insurance Consultant*



Second Edition • 1992

**INSURANCE INSTITUTE OF AMERICA**
*720 Providence Road, Malvern, Pennsylvania 19355-0716*

**26—Ocean Marine Insurance**

damaged, destroyed, or lost because of a covered peril. Hull insurance on oceangoing commercial vessels is often referred to as "blue-water" hull insurance, and hull insurance on commercial vessels used on coastal and inland waterways is often referred to as "brown-water" hull insurance. Offshore oil and gas drilling rigs and production platforms are insured under specialized ocean marine forms that resemble hull policies on commercial vessels. Hull insurance is also provided on private pleasure craft, including yachts and smaller craft such as outboard motorboats. Usually, hull insurance on pleasure craft is provided as part of a package policy providing both property and liability coverage.

Hull insurance is also included in builders risk policies covering vessels during the course of construction, alteration, or repair. Other applications of hull insurance are for covering floating dry docks (which are usually not considered to be vessels themselves) and the inventories of boat dealers, which may include not only pleasure boats but also boating supplies and even clothing held for sale.

**Loss of Income Insurance.**   Ocean marine loss of income insurance covers a shipowner against loss of business income resulting from damage to or loss of the insured vessel. When written for cargo vessels, whose income is called *freight*, the coverage is also referred to as *freight insurance*. Loss of income can also be written for vessels that do not earn freight, such as passenger vessels and working vessels such as dredges, pipelaying barges, and drill ships. Loss of income coverage is also purchased on offshore oil and gas drilling rigs and production platforms.

A cargo owner or consignee can suffer a loss of business income when property lost or damaged in transit is essential to the owner's or consignee's business. If, for example, loss in transit of a production machine delays startup of a new assembly line by six months while a replacement machine is being built, the manufacturer will suffer a corresponding loss of business income. This type of business income loss, as well as extra expenses incurred to reduce the loss, can be insured under either a separate cargo business income policy or an extension to a regular cargo policy.

## Liability Insurance

Liability insurance written by ocean marine insurers can be divided into three categories: (1) collision liability insurance that is included in hull policies, (2) protection and indemnity insurance, and (3) other liability insurance.

**Collision Liability Insurance.**   Collision liability insurance is included in most commercial hull insurance policies. It covers the liability

of the insured vessel for damage to another vessel and property thereon resulting from collision between the insured vessel and the other vessel.

**Protection and Indemnity Insurance.** Protection and indemnity (P&I) insurance is the major form of liability insurance for vessels. This insurance protects the insured against (1) liability for bodily injury (including death) or property damage arising out of specified types of accidents, and (2) certain unexpected vessel-related expenditures. The principal types of liability covered are for the following:

- Loss of life, injury, and sickness of the crew, passengers, and third parties
- Damage to cargo on board the vessel
- Damage to piers, docks, jetties, and other fixed objects
- Damage to other vessels and their cargo caused by a hazard other than collision (crowding or "wave wash," for example)
- Inadvertently incurred fines and penalties
- Expenses incurred when the law requires that a wrecked vessel be removed

In many cases, P&I policies are broadened to include coverage for collision liability losses in excess of the collision liability coverage provided under the hull policy. This optional P&I feature is desirable because collision liability coverage under the hull policy is ordinarily limited to a separate amount of insurance equal to the agreed value of the vessel, which could be less than needed to pay collision liability claims.

P&I policies covering large oceangoing vessels, including oil tankers, usually include coverage for environmental damage and cleanup costs resulting from spills of oil or other hazardous substances. In other P&I policies, the pollution liability exposure is often excluded and the insured buys a separate pollution liability policy.

**Other Liability Insurance.** Other ocean marine liability policies include the following:

- Liability insurance for maritime businesses such as ship repairers, stevedores, wharfingers, and terminal operators
- Liability insurance for marina operators and boat dealers, who principally serve the needs of pleasure boat owners
- Policies covering the liabilities of charterers of commercial vessels
- Policies providing limits in excess of those of primary P&I or other liability policies

## Distribution of Ocean Marine Premiums

An approximation of how premiums written in the U.S. market are distributed among basic types of ocean marine insurance can be derived

INSURANCE LIBRARY ASSOCIATION
156 STATE STREET
BOSTON, MA. 02109

# DICTIONARY
# OF
# INSURANCE

### Lewis E. Davids

Seventh Revised Edition

Littlefield, Adams Quality Paperbacks

**Prospective rating (Also Self Rating or Experience Rating)**  A method used in arriving at the reinsurance rate and premium for a specified period, based in whole or in part, on the loss experience of a prior period. *See* **Experience rating.**

**Prospective rating plan**  The formula in a reinsurance contract for determining reinsurance premium for a specified period on the basis, in whole or in part, of the loss experience of a prior period. *See* **Spread loss reinsurance.**

**Prospective reserve**  A reserve based upon the present value of assumed future claims minus the present value of net premiums assuming a given rate of interest for both sums.

**Prospectus**  A printed statement of a forthcoming enterprise.

**Pro tanto**  For a certain amount.

**Protected**  In fire insurance—a risk located in an area protected by a fire department. In burglary insurance—a risk equipped with a burglar alarm.

**Protection**  The safeguarding against loss provided under the terms of the insurance policy, and is known also as coverage. In fire insurance, it may refer to the existence of facilities for fire fighting within the insured's property.

**Protection amount**  The face amount of a life insurance policy, or amount of money that will be paid to a beneficiary upon the death of an insured—depending upon the policy. This amount will be reduced by the amount of any outstanding policy loan.

**Protection and indemnity clause**  A clause in a marine insurance contract affording protection and indemnity insurance.

**Protection and indemnity insurance**  Insurance against loss due to claims for damages against vessel owners or operators not covered by the basic marine insurance contract, often written by mutual associations called clubs.

**Protection class**  Protection class is a rating of the local fire department's capabilities and the availability of fire hydrants and other water supply sources, usually on a scale of from 1 to 10, with 1 being best and 10 having essentially no fire protection.

**Protective liability insurance**  Provides against claims which may arise out of secondary or indirect responsibilities; such

property of manufacturer except on the premises of the manufacturer.

**Manuscript policy** Insurance policy typewritten or handwritten to include specific coverages or conditions not provided in a standard policy. In any dispute over policy language, the adhesion doctrine is modified for such a policy.

**Manuscripts** Despite the fact the word "book" includes bound and unbound documents ranging from a single sheet to many sheets, manuscripts are not generally covered by a fire policy unless specifically stated, and under an agreement as to their value. In such a case where the value is stated, the policy becomes insofar as the item on manuscripts is concerned, a valued policy. As a matter of practice where agreed upon, manuscripts are included under a proviso that in case of loss no single manuscript shall exceed a stated sum in value. This avoids the valued feature, as the value of the manuscript is left for appraisement when the loss occurs.

**Manuscripts insurance policy** Type of business insurance coverage. Self-explanatory.

**Map clerk** A junior underwriter who enters on the maps essential data (policy number, amount, property covered, and expiration date) regarding certain types of policies.

**Maps** In fire insurance, maps are used by underwriters to locate and indicate the character of the risk, especially in large cities. Notations on the maps indicate the amount of liability carried on a particular risk in a certain area.

**Marginal land** That which barely pays the cost of working or using. Land wherein the costs of operating approximately equal the gross income.

**Marine insurance** That form of coverage which is primarily concerned with the protection of goods in transit and the means of transportation. This term is applied in common usage to risks involving ocean transit. *See* **Inland marine.**

**Marine perils** Risks covered by marine insurance policy. Perils "ejusdem generis" with the perils noted in the policy. Each word that is used in the marine policy has been defined by admiralty decisions.

**Marine syndicates** Associations of insurance companies acting in common to inspect, survey, establish standards, and to insure ocean marine risks.

THE INSURANCE LIBRARY
156 STATE STREET
BOSTON, MA  02109

# Glossary of Insurance and Risk Management Terms

## *Tenth Edition*



**International Risk Management Institute, Inc.**
**Dallas, Texas**

property damage • protection and indemnity  191

**property damage**—As defined in the general liability policy, physical injury to tangible property including resulting loss of use and loss of use of tangible property that has not been physically injured. Also addressed in the homeowners and personal auto policies. *[PRMI 5.C, 10.C]*

**property insurance**—First-party insurance that indemnifies the owner or user of property for its loss, or the loss of its income-producing ability, when the loss or damage is caused by a covered peril, such as fire or explosion. In this sense, property insurance encompasses inland marine, boiler and machinery, and crime insurance, as well as what was once known as fire insurance, now simply called property insurance: insurance on buildings and their contents. *[CPI II.D]*

**property transfer liability insurance**—Property transfer liability insurance covers the buyer of a property for third-party bodily injury and property damage claims and cleanup costs arising out of the property, but only for contamination that had not yet been detected as of the policy's inception date. Failure to disclose known contamination voids coverage with respect to that particular pollution incident. *[CRM III.T]*

**proportional liability**—Refers to an arrangement for the assignment of liability in which each member of a group is held responsible for the financial results of the group in proportion to its participation. Compare to joint and several liability.

**proportional/pro rata reinsurance**—A catch-all term for all types of quota share and surplus reinsurance, in which the reinsurer shares proportionally the losses and premiums with the ceding insurer.

**proposal bond**—See BID BOND.

**pro rata**—Proportionately.

**pro rata cancellation**—The cancellation of an insurance policy or bond with the return premium credit being the full proportion of premium for the unexpired term of the policy or bond, without penalty for interim cancellation. See also SHORT-RATE CANCELLATION.

**pro rata distribution clause**—A seldom used property insurance provision that essentially converts a single blanket limit, applying over several locations, to specific limits.

**pro rata reinsurance**—A term describing all forms of "proportional" reinsurance. Under pro rata reinsurance, the reinsurer shares losses in the same proportion as it shares premiums and policy amounts. Quota share and surplus share are the two major types of pro rata reinsurance.

**proration**—The adjustment of policy benefits due to a change of exposure or existence of "other insurance."

*pro se*—Latin: "in propria persona." A plaintiff who does not (or cannot) hire an attorney and who represents himself.

**prospect**—The potential buyer of insurance.

**prospecting**—The act of looking for potential buyers of insurance.

**prospective aggregates**—Spread loss program giving accident year reinsurance for long-tail risks with premiums paid annually over the expected life of the policy. (Any adjustments in pricing resulting from adverse loss development occur prospectively.) *[RF V.D]*

**prospective loss costs**—See LOSS COSTS.

**prospective rating**—A method used in arriving at an insurance or reinsurance rate and premium for a policy period based on the loss experience of a prior period. Schedule credits, experience modification, and individual risk rating modifications are factors used in prospective rating, whereas losses incurred during the policy period have no effect on final premium. Guaranteed cost plans, with or without a dividend, are examples of prospectively rated insurance plans. *[RF I.B]*

**protected cell captive (PCC)**—See CELL CAPTIVE AND SPECIAL PURPOSE VEHICLE (SPV).

**protection and indemnity (P&I) insurance**—Liability insurance for practically all maritime liability

**2   protection and indemnity • psychological rehabilitation**

ociated with the operation of a vessel, other than it covered under a workers compensation policy d under the collision clause in a hull policy. *[IWC .K]*

**otection classes**—The 10 categories used by Insur- ıce Services Office, Inc. (ISO), to rank cities and wns according to the availability of water, e.g., fire ⁄drants and water pressure, and the quality of fire- ghting, e.g., training of personnel and paid versus ɔlunteer. Protection class 1 indicates the best avail- ɔle protection; class 10 indicates a rural area without re hydrants or fire departments. *[CPI IV.F]*

**ɔrotective liability insurance**—A general term de- cribing a type of liability insurance that is pur- hased by an indemnitor, such as a contractor, for its ndemnitee, such as the person for whom the con- ractor is performing operations, to protect that party ıgainst liability for bodily injury or property damag- ɛs arising out of the indemnitor's operations. See al- ɔo OWNERS AND CONTRACTORS PROTECTIVE LIABIL- ITY INSURANCE; RAILROAD PROTECTIVE LIABILITY INSURANCE. *[CLI VI.Q, VI.R; CRT XII.B]*

**protective order**—Any order or decree of a court whose purpose is to protect a party from harassment or further discovery.

**Protective Professional Indemnity Insurance**— Provides supplemental coverage for professional er- rors and omissions claims by the insured against its own design professionals. The policy sits atop all of the insured's design professionals' practice policies as a form of excess coverage in the event the design professional's policy limit has been exhausted or is not sufficient to pay the claim. The insured (e.g., project owner or design-build contractor) must prove a legal claim for professional negligence against the design professional to collect under the policy. *[CRM VIII.H]*

**protective safeguards endorsement**—A property insurance endorsement that makes it a condition of coverage that the protective safeguards cited in the endorsement (such as an automatic sprinkler system or night watchguard) be in operation at all times ex- cept when the insurer has been notified of the im- pairment in protection. Failure to maintain the pro- tective safeguards in good working order or failure

to notify the insurer of even a temporary impairment in protection suspends coverage until the protection is restored. *[CPI VI.C]*

**provisional notice of cancellation (PNOC)**—No- tice is given to allow the option of withdrawing from the reinsurance treaty if renewal terms are unaccept- able. Issued with continuous contracts.

**provisional premium**—See DEPOSIT PREMIUM.

**proximate cause**—A doctrine by which a plaintiff must prove that the defendant's actions set in motion a chain of events that could have reasonably been an- ticipated to lead to the plaintiff's damages. If the de- fendant's actions were "proximate" or close enough in the chain of causation to the plaintiff's damages, courts will impose liability. Otherwise, if the conse- quences of the defendant's actions are too remote or were unforeseeable, there will be no liability. The seminal case on proximate cause is *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), which nicely illustrates the concept. Two em- ployees negligently helped a man board a train that was just leaving a station. The natural or foreseeable consequences of ill-advisedly pushing or pulling a man up onto a moving train would have been that the man could have fallen, injuring himself or somebody else nearby. But that is not what happened. In this case, the man was carrying a package. Unbeknownst to the railroad employees, the package contained fire- works. When the employees helped the man onto the train, he dropped the package and the fireworks went off. The vibrations of the fireworks explosion caused a scale to tip over and fall onto a woman waiting for a different train at a different part of the platform. This was completely unexpected. The dissenting judge ar- gued that the railroad should not be liable because the woman's injuries were too attenuated, or too remote, in the long chain of events set in motion by the ac- tions of the railroad employees that the employees could not have reasonably anticipated such a bizarre result. The dissenting view, limiting a defendant's lia- bility to the reasonably foreseeable results that are "proximately" caused by his or her actions, has been adopted as the basic law of proximate causation in all 50 states.

**psychological rehabilitation**—One aspect of the overall rehabilitation process that concentrates on re-

**manufacturers and contractors (M&C) insurance**—Now obsolete, prior to the 1986 revision of the commercial general liability (CGL) policy, this policy form was used as a means of providing premises and operations coverage to manufacturers and certain types of contractors, primarily construction and installation contractors. Today, if an insurer wishes to exclude the products-completed operations hazard, it can do so by attaching the products-completed operations hazard exclusion endorsement. The insured can then purchase separate products and completed operations coverage.

**manufacturer's output policy (MOP)**—A broad all-risk policy that provides a combination of commercial property and commercial inland marine coverages manufacturers and many other businesses need. MOPs were developed in the mid-1950s, as a method of insuring in a single policy stock both during the manufacturing process and in transit. Because the MOP's combination of commercial property and commercial marine coverages met the needs of many different types of organizations, MOP eligibility also expanded over time, to include many industrial, processing, and commercial operations. In recent years, the term "commercial output policy" and the "COP" acronym have begun to replace the term "manufacturers output policy" and the "MOP" acronym in the commercial insurance arena since they more accurately reflect the wide range of organizations that can be insured under this type of policy. The American Association of Insurance Services (AAIS) offers standard COP forms and rules for use by its member insurers. In addition, many insurers have developed their own COP forms and rules. COP premiums are typically developed using a distinctive rating system (referred to as a "deficiency point rating system") that allows many insurers to be more competitive using a COP than they could be using a standard commercial property policy. *[CPI VII.N]*

**manufacturers penalty insurance**—Coverage in the event of late delivery of a product for an agreed amount based on the contract between the insured manufacturer and a purchaser. Designed for manufacturers who are compelled to enter into contracts under which they assume responsibility for delay in completion of a product. The policy generally covers 90 percent of the penalty loss sustained, but does not extend to strikes or labor disputes.

**manufacturer's selling price endorsement**—See SELLING PRICE CLAUSE OR ENDORSEMENT.

**manuscript policy**—A policy form that is written to cover a specific risk. Manuscript policies differ from "standard" policies in that they are one-of-a-kind. Most frequently, manuscript policies are used to cover either high value or unusual risks for which standard forms are not well-suited.

**marina operators legal liability coverage**—Insures the liability exposures associated with the operation of a marina including those related to the care custody, and control of watercraft. The coverage may include both land and waterborne exposures located at the marina. A marina operator is responsible for affording vessels that make use of its facilities with a safe berth. To that end, the marina operator must advise a vessel operator of any hazards or deficiencies associated with the marina or the berth that the vessel is to moor in. When the marina operator fails to do this, the operator becomes liable to the vessel operator for damage that results from the unsafe berth. Polices normally provide coverage for private pleasure vessels but may be endorsed to cover commercial vessels should one dock at the marina.

**marine insurance**—A type of insurance designed to provide coverage for the transportation of goods either on the ocean or by land as well as damage to the waterborne instrument of conveyance and to the liability for third parties arising out of the process. The two branches of marine insurance are ocean marine (primarily water-based exposures) and inland marine (primarily land-based exposures).

**maritime law**—See ADMIRALTY LAW; MARINE INSURANCE.

**market conduct**—The way an insurer operates in relation to its customers and suppliers. Regulated strictly, to ensure no rebating, for example.

**market conduct exam**—Investigation by insurance regulators to determine if an insurer has followed laws relating to the distribution of products to consumers and settlement of claims.

THE INSURANCE LIBRARY
156 STATE STREET
BOSTON, MA 02109

# Insurance Words & Their Meanings

*A Glossary of Insurance Terms*

edited by

The Technical and Educational Products Division
of The Rough Notes Company, Inc.

and

Bruce D. Hicks, CLU, CPCU



**RN**
Rough Notes
SINCE 1878

032
R856
2007

Insurance Words & Their Meanings

2) As used in automobile insurance, actual damage or loss to the vehicle itself caused by collision, overturn, fire, theft, vandalism or malicious mischief.

## physical hazard

Danger of loss or liability arising from the condition, occupancy or use of property, as opposed to such danger arising from the character of the policyholder.

*(See moral hazard, hazard and morale hazard.)*

## physicians and surgeons professional liability insurance

Protects physicians and surgeons against claims for personal injury arising from malpractice, errors or mistakes in rendering professional services. Presently, a most expensive coverage due to high jury awards against the medical profession.

## PIA—Professional Insurance Agents

Formerly National Association of Mutual Insurance Agents, a trade association whose purpose is to protect the business interests of its members, who also are members of state associations. Headquarters: Alexandria, VA.

## P & I Insurance

Protection and indemnity insurance for shipowners, contractors, and charterers against liabilities arising out of the operation of the vessel for loss of life to any person, illness or injury to passengers and crew, damage to cargo while loading, carrying or unloading cargo, damage to piers and docks, and removal of wreckage as required by law.

## pilferage

Theft in small quantities; for example, not limited to the taking of a whole package or all of the property insured.

## PIP—personal injury protection

*(See personal injury protection (PIP).)*

## piracy

1. Robbery on the high seas; typically, the unlawful seizure of vessels and/or cargo.

2. Describes the unauthorized duplication (and redistribution) of copyrighted materials, particularly music, movies, game software, etc.

## P.I.V.—post indicator valve

When water mains are buried around industrial plants protected by automatic sprinklers, the flow of water in a buried pipe may be controlled by a valve which projects above the ground and has an indicator showing whether it is open or closed. Such valves are post indicator valves, abbreviated on diagrams as "P.I.V."

## placed business

A life and health insurance term used to designate the business that has been underwritten and accepted, an initial premium has been received, and the policy has been issued and delivered (placed) to the insured.

## placer

The person in an insurance broker's office who directly negotiates with insurance companies for the acceptance or rejection of business.

## plaintiff

Any party who initiates a lawsuit.

## plaintiff bonds

A bond required by law that guarantees that a plaintiff can pay any damages that may be determined by a court. The bond must be posted before a lawsuit begins.

## plan determination letter

A pension plan must be filed with the IRS to determine if it meets the requirements for a qualified plan. This ruling is called a determination letter. Each year, the plan must meet continuing requirements to retain its classification as a qualified plan. For example, a plan must avoid "top heaviness," where too much of the pension funding or benefits accrues to top officers and other highly compensated employees.

## plan participant

The person in a health, employee benefit or pension plan to whom the benefits accrue.

*(See also plan sponsor.)*

## plan sponsor

The business or entity that adopts a pension, health or employee benefit plan for the plan participants.

*(See also plan participant.)*

## plate glass insurance

Coverage against the breakage of glass.

## platform insurance

A special type of ocean marine insurance designed to cover off-shore oil or gas platforms and drilling barges.

## pleasure use

A rating classification term used in auto insurance that indicates the vehicle is not used for business and does not have commercial exposures, other than to drive back and forth from work.

erage needs of the client. Usually this type of approach is used for large insureds or specialty exposures.

**MAP—Multicoverage Account Plan**

A program providing favorable rate treatment for large risks written on an account basis. The plan applies to a combination of property and liability policies written by one insurer for one insured and having common expiration or anniversary dates. Not to be confused with the Individual Risk Premium Modification Plan, which relates to package policies of the special multiperil program. Lower rates are developed in the MAP program based on risk and expense modification and also the use of deductibles.

**map**

Maps of cities and towns giving details of construction and fire protection, made by the Sanborn Map Company—formerly used more commonly than today. Fire insurers kept such map records in their offices to indicate the location and other details of their insured risks in order to prevent undue concentration in a given building, city block, or area.

*(See map clerk.)*

**map clerk**

One who records the company's property lines on the Sanborn Map or on other records of the company's liability. In the past, being a map clerk was the first step to becoming a fire underwriter, but now the daily practice of mapping fire insurance liability has almost ceased.

*(See map and Sanborn Map.)*

**mapping**

*(See geocoding.)*

**margin account insurance**

A form of credit life coverage, usually written on a group basis, to protect both stock broker and stock purchaser against loss from the death of the purchaser while moneys are owed for stock acquired on margin (or with partial payment).

**Marine Accident Investigator's International Forum**

An Internet-based association that shares information on various marine insurance issues including loss investigation, risk management, settlement, safety, and environmental concerns. Membership is international in scope. Web address (as of this writing): www.maiif.net

**marine definition**

The 1953 NAIC recommendations, since adopted by most states, of those subjects which should be consid-

ered as marine insurance for regulatory purposes: insurance covering domestic shipments being transported or subject to transportation, insurance on instrumentalities of transportation and communication, and property floaters covering property being transported or subject to being transported. While the definition does not differentiate between ocean and inland marine insurance, its scope is primarily inland.

**marine insurance**

One of the major divisions of insurance (life, health, property, marine, casualty, surety), primarily written for property in transit. If by sea, "ocean" marine or "wet" marine; otherwise, "inland" marine.

**marine law**

Section of the federal or national court system which deals with matters pertaining to vessels, crew, and their cargoes navigating on interstate or international waters. Maritime procedures, precedents and rules are different in admiralty courts than in other courts. Also called admiralty court.

**marine perils**

The perils which are insured against in a policy of ocean marine insurance. The wording of the marine policy is the result of several hundred years of careful study, judicial interpretation and precedent, and thus such perils have maintained an exact definite meaning in marine insurance.

**marine syndicates**

Groups of insurance underwriters that act through a manager to insure certain ocean marine classes of business.

*(See syndicate.)*

**maritime employers liability coverages**

*(See Jones Act, U.S. Longshore and Defense Base Coverage Acts.)*

**market assistance program**

A plan originated in Connecticut with the product liability crisis of 1975 to assist in the finding of available insurance through local committees of companies and producers. Recommended at that time by NAIC Advisory Committee and used later in a number of states for municipal liability insurance, day care centers, liquor liability risks, and more recently for commercial general liability insurance. Not considered a cure for limited availability of insurance, the plan(s) eased and reduced the impact.

**market, tight**

1) Scarcity of insurance.

2) Widespread reluctance of insurers to insure certain risks.

http://www.chartisinsurance.com/us-marine-liability-insurance_295_182666.html

## CHARTIS.

EXHIBIT H

USA   Worldwide

[Search]

About us   News   Careers   Contact

Home   Personal   Business   Targeted Solutions   Industry   Claims

### Marine Liability Insurance

Products   Global Marine and Energy   Marine

**Marine Liability Insurance tailors a wide-range of liability coverages for the unique needs of transportation and facility operators.**

Contact Us
- Email:
  marineandenergy@chartisinsurance.com

Show Tab View | Show List View

| Features and Benefits | Marketing Materials | Claims | Loss Control/ Engineering | Applications |

- Available coverage includes: Stevedore's Liability, Wharfinger's Liability, Terminal Operator's Liability, Ship Repairer's Liability, Charterer's Liability, Excess Marine Liabilities, Bumbershoot
- Underwriting, claims, recovery, loss control, and risk management services provided by marine specialists throughout the world

Copyright 2012 Last Updated Date February 01, 2011

Terms of Use | Privacy | Legal Notice | Producer Notifications | Site Map | Security Notice



CHARTIS.

About us   News   Careers   Contact

Home   Personal   Business   Targeted Solutions   Industry   Claims

**Marine Liability Insurance**

Products   Global Marine and Energy   Marine

**Marine Liability Insurance tailors a wide-range of liability coverages for the unique needs of transportation and facility operators.**

**Contact Us**

■ Email:
  marineandenergy@chartisinsurance.com

Show Tab View | Show List View

| Features and Benefits | Marketing Materials | Claims | Loss Control/ Engineering | Applications |
| --- | --- | --- | --- | --- |

**Charterer's Liability Application (.doc)**
A sample application for the AIG Global Marine and Energy Charterer's Legal Liability insurance.

**Terminal Operators Liability Insurance Application (.doc)**

**Terminal Operations Questionnaire (.doc)**
Questionnaire for Terminal Operations

**Wharfingers Legal Liability Application (.doc)**
Application for Wharfinger's Legal Liability Insurance

**Stevedore's Terminal Operators Application (.doc)**
Application for Stevedore's Terminal Operators Application

**Ship Repairer's Legal Liability Application (.doc)**
Application for Ship Repairer's Insurance

**Port Authority Property Insurance Application(.doc)**
Application for Port Authority Insurance

**Marina Operators Legal Liability Application (.doc)**
Application for Port Authority Insurance

**Marine Excess Liability Application (.doc)**
Application for Marine Excess Liability / Bumbershoot Policy

**Marine General Liability Application (.doc)**

**Charterer's Liability Application Supplement (.xls)**

**Marine General Liability Detailed Loss Record Application Supplement (.doc)**

**Marina Operators Liability Application Supplement (.doc)**

**Ship Repairer's Liability Application Supplement (.doc)**

**Watercraft Liability (P&I) Application Supplement (.doc)**

**Combined Wharfinger's Stevedore's Terminal Operators and Tankerman's Liability Supplement (.doc)**

Copyright 2012 Last Updated Date February 01, 2011

Terms of Use | Privacy | Legal Notice | Producer Notifications | Site Map | Security Notice

Global Marine and Energy





Product Profile

# Global Marine

**Global Marine** is one of the world's leading providers of marine insurance for importers, exporters, vessel owners/operators and recreational marine and marine operations worldwide.

## Coverage Highlights

**Cargo Insurance**
All risk and third party coverage can be underwritten for:

– Exporters and importers (including stock throughput)
– Multinational accounts (including captives)
– Freight forwarders
– Infrastructure projects (including ALOP)

Comprehensive coverage for goods in transit can be enhanced to include warehouse, storage or consolidation risks. Worldwide master policies, including locally admitted coverage as required, are available.

**Marine Liability Insurance**
A wide range of liability coverages are tailored for transportation and facility operators. Coverages include:

– Stevedore's Liability
– Wharfinger's Liability
– Terminal Operator's Liability
– Ship Repairer's Liability
– Charterer's Liability
– Excess Marine Liabilities
– Bumbershoot

**Hull and Protection and Indemnity (P&I) Insurance**
Hull and P&I insurance are underwritten for a wide range of risks, including:

– Tugs
– Barges

– Passenger vessels
– Supply vessels/crew boats
– Research vessels
– Ferries
– Tankers
– Bulk carriers
– General cargo vessels
– Roll-on roll-off vessels
– LNG-LPG carriers

P&I can also be provided on most types of non-oceangoing vessels and can be enhanced to include war risk, political risk (including confiscation, expropriation and nationalization) and builder's risk.

**Recreational Marine Insurance**
Comprehensive coverage for boats and yachts of any size from runabouts to mega-yachts, services include:

– Dedicated and experienced team of recreational marine underwriters providing the best solution to any specialized situation
– Comprehensive policy available utilizing the full scope of Chartis experience and knowledge
– Quality coverage at a reasonable price including recognition of loss-free history
– World class customer service
– Proven global claims servicing network to handle all claims
– Proven global Loss Control network to provide knowledge and assistance around the world

## Key Benefits

| | | |
|---|---|---|
| Underwriting, loss control, claims and recovery services provided by marine specialists globally | Limits among the highest in the industry<br><br>Flexible programs, tailored for client needs | High quality coverage for multinational risks, including locally admitted policies |

© All rights reserved.

Continued ›



**CHUBB GROUP OF INSURANCE COMPANIES**

July 13, 2012

United States | Search

Home > Business Insurance > Property & Casualty > Marine > Ocean Marine > Marine Liability

## Marine Liability

Marine liability is insurance for liability or property damages to a third party, while engaged in marine related operations. We work side-by-side with Axiom Insurance Management, Ltd. to deliver exceptional marine liability insurance products in the U.S. and Puerto Rico. We offer these future-oriented products elsewhere through our global marine staff.

### OTHER SOLUTIONS

**CargoPort**

If your company has international transportation exposure, CargoPort - our web-based application -will enable you manage your global operations.

Learn More ›

**Ocean Cargo**

Our industry-leading ocean cargo insurance is designed to protect you from international transit risks in one convenient and custom-tailored policy.

Learn More ›

### Monoline Marine Liability
These products insure liability obligations on a primary or excess basis.

- **Charterer's Legal Liability** - Insures obligations to the vessel owner and others.
- **Marina Operator's Legal Liability** – Insures obligations to owners of watercraft while in the marina's care, custody, and control.
- **Shiprepairer's Legal Liability** - Protects against damage to vessels while in the care, custody, and control of the shiprepairer.
- **Stevedore or Wharfinger's Legal Liability** – Protects the stevedore or wharfinger against damage to vessels and their cargo while in the care, custody and control of the stevedore or wharf facility (for the purpose of loading and discharging a vessel).
- **Terminal Operator's Legal Liability** - Gives the terminal operator insurance against damage to cargo while in the care, custody, or control of that operator (for the purpose of storage).
- **Vessel Builder's Risk** – Insures the materials going into the vessel; the completed vessel for physical damage; and the liability obligations the builder has to the owner of the vessel until completed and delivered to the owner.

### Marine General Liability Insurance
Marine General Liability insurance advances your interests by extending a monoline marine liability insurance policy to include the general liability hazards of:

- Premises/completed operations
- Products liability
- Work in progress
- Contractual liability
- Owners and contractors protective

### Excess Liability Insurance

- **Bumbershoot Insurance** is in excess of marine and non-marine primary policies, similar to an umbrella policy
- **Follow Form Excess Liability Insurance** is in excess of any of the monoline liability policies. Excess protection and indemnity and collision and towers liability are also available.



**Think FORWARD. Think Chubb.**

BUSINESS INSURANCE
MARINE

# Ocean Marine Insurance

Ocean marine insurance solutions to keep you moving forward.



**We look to our long tradition of insuring ocean marine risks to help create the solutions you need today.**

A container of clothing from China is delivered to a loading dock, but many sizes from the Spring collection are missing…. Clean room devices are damaged from exposure to dust upon customs inspection at a port in Germany…. When a shipment of frozen seafood arrives from a supplier in Thailand, the shrimp has thawed and can't be used….

International trade is a dynamic field with ever-changing arrangements between trading partners. How will you protect your business from the uncertainty ahead?

## Solutions that move forward with you

In 1882, we founded our business by insuring ocean marine risks, establishing a reputation for creative insurance solutions—as well as financial stability and a commitment to service—that continues today. Over a century of experience has made us an insurer that truly understands ocean marine risks, while our global presence allows us to address your needs around the world.

## Ocean Cargo

Ocean Cargo insurance applies to all your international transit exposures in one convenient and custom-tailored policy. Easy-to-read language, a summary declarations page and a simplified rate schedule are among the highlights, along with several competitive advantages not readily found in standard policies such as:

- **World to World** insurance except where prohibited by law.

- **Broadened Duration of Risk** includes loading at origin and unloading at destination.

- **Automatic Extra Expense** protection includes additional freight, debris removal, expediting and repacking.

### Target customer profile

Our target market includes companies across a range of industries around the globe:

Ocean cargo

- Importers and exporters

- Logistics providers, including ocean cargo carriers

- Manufacturers and distributors

- Wholesalers and retailers

Marine Liability

- Ship repairers

- Stevedores

- Terminal operators

Marine Hull

- Ocean cargo carriers

- Passenger and cruise operators

- Exploration companies

## Marine Hull

Marine Hull insures your international and specialized watercraft for first-party physical damage, often in conjunction with third-party collision liability. Via our Lloyds of London Syndicate, Chubb 1882, we are able to provide insurance solutions for such interests as:

- Mega-yachts
- Construction and conversion risks
- War risks

### Marine Liability

If you are a ship repairer, stevedore, terminal operator or other marine-related business. Marine Liability encompasses primary and excess liability insurance solutions to help protect your operations:

- **Monoline Marine Liability** protects the liability obligations of your marine-related operation for property of others while in your care, custody or control.
- **Marine General Liability** insures the general liability hazards of your premises, products, completed operations, work in progress, contractual, and owners and contractors protective, in addition to the monoline marine liability exposure.
- **Excess Liability** insures excess of your primary marine liability policy, including vessel owner liability.
- **Bumbershoot Liability** insures in excess of your marine and non-marine primary policies, similar to an umbrella policy.

## Why Chubb?

- **Global reach**—Through our extensive network of 120 wholly-owned offices in 27 countries, Chubb Marine Underwriters delivers inland and ocean marine products and services to every marketplace, from the specialty markets in cities such as London, Singapore, New York and Sao Paulo, to local markets around the world.
- **Loss control**—Our Loss Control risk engineers have the technical skills and deep marine industry knowledge to identify loss trends and potential problems as well as recommend solutions to mitigate or prevent loss.
- **Claim service**—Our reputation for claim service is legendary. We strive to respond to every claim within 24 hours of notification of loss and to issue payment for a covered loss within 48 hours of settlement. Chubb is recognized for equitable marine recoveries and a proven track record of successful subrogation activity.
- **Stability**—You can count on us to be there when you have a loss. Chubb consistently earns high ratings from A.M. Best Company for financial stability and from Standard & Poor's and Moody's for claim-paying ability.

### CargoPort℠ by Chubb

This powerful, web-based application will revolutionize the way you do ocean cargo business. Sophisticated, yet intuitive and easy-to-use, CargoPort℠ offers 24/7 access to policy details and import/export activity, enabling real-time interaction between Chubb, your agent, and you. Robust, online features include:

- Cargo certificate issuance
- Shipment and storage declarations
- Management reports
- OFAC searches and vessel verification

Please visit our website for a virtual tour of CargoPort℠.

### Connect with us today

For more information about how Chubb can protect your ever-changing ocean cargo risks and move forward with you, contact your agent or broker, or visit us at www.chubb.com.



**Chubb Group of Insurance Companies | www.chubb.com**

Chubb refers to the insurers of the Chubb Group of Insurance Companies. Not all insurers do business in all jurisdictions. This literature is descriptive only. Actual coverage is subject to the language of the policies as issued. Whether or to what extent a particular loss is covered depends on the facts and circumstances of the loss and the actual coverage of the policy as issued. Chubb, Box 1615, Warren, NJ 07061-1615.

Form 04-01-0093 (Ed. 5/12)

Printed on recycled paper 

Case 2:09-cv-03646-HGB-JCW Document 591-7 Filed 07/17/12 Page 50 of 53



- **United States (Change Location)**

Businesses / Product Listing by Category / Commercial Marine / Marine Liability Insurance

# Marine Liability Insurance

Terminal operators, charterers, ship yards/repairers, marine contractors and stevedoring operations must protect against risks that can impact their corporate assets.

Businesses can minimize their exposure with ACE Marine Liability insurance, designed to address the unique needs of this segment of the U.S. marine market.

## Benefits:

- Comprehensive coverage
- Solutions and policy terms tailored for the size and complexity of exposure, from established enterprises to new entrants
- Unparalleled marine industry expertise
- Fast, flexible underwriting response
- Tailored engineering, including Marine Advisory Services
- Quality claims handling
- Broad ACE global network capabilities with ACE-owned offices in all major markets and network of long term partners committed to ACE global standards
- Backed by ACE financial strength and industry-leading technology

## Coverage:

- Primary Commercial Marine Liability
- Excess Commercial Marine Liability
- Bumbershoot
- Marine General Liability
- Ship Repairers Liability
- Wharfingers Liability
- Marine Terminal Operators Liability
- Stevedores Liability
- Charterers Legal Liability

---

**Non-marine Insurance Products**

In addition to complete line of traditional marine products, ACE Commercial Marine underwriters also can provide an array of non-marine product for complete coordinated package solution, including:

- Commercial General Liability
- Property

---

○ Commercial Automobile
○ Inland Marine (computers and heavy equipment, floaters)
○ Boiler & Machinery
○ Crime & Fidelity
○ Business Interruption
○ Liquor Liability
○ Option for Bumbershoot coverage

# Minimums

**Minimum Premium**
$5,000

# Target Client

- Terminal Operators
- Marina Operators
- Charterers
- Ship Repairers
- Wharfingers
- Stevedores

# Applications

| Document Name | Size | Date |
|---|---|---|
| Marine Liability Insurance Editable Application.doc | 248 KB | 04/26/2011 |
| Ship Repairers Liability Insurance Editable Application.doc | 200 KB | 04/26/2011 |
| Bumbershoot Insurance Editable Application.doc | 378 KB | 04/26/2011 |
| Terminal Operator's-Wharfinger's-Stevedore's Legal Liability Insurance Printable Application.doc | 278 KB | 04/26/2011 |
| Charterer's Liability Insurance Editable Application.doc | 145 KB | 04/26/2011 |
| Wharfinger's Landing Dock Bailee Legal Liability Insurance Editable Application.doc | 140 KB | 04/26/2011 |

- A |
- A |
- A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF ANTILL PIPELINE CONSTRUCTION CO., INC., AS OWNER OF THE BARGE LML 103 AND M/V RUTH R, AND AS ALLEGED CHARTERER OF THE BARGE GD 897 FOR EXONERATION FROM OR LIMITATION OF LIABILITY<br><br>Applies to: 09-3646 & 11-3058<br><br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | \* CIVIL ACTION NO. 09-3646<br>\*              c/w  10-2633<br>\*              c/w  11-3058<br>\*<br>\* SECTION C-2<br>\*<br>\* JUDGE HELEN G. BERRIGAN<br>\*<br>\* MAGISTRATE JOSEPH C.<br>\* WILKINSON, JR.<br>\* |

<u>AFFIDAVIT</u>

STATE OF TEXAS

COUNTY OF TARRANT

BEFORE ME, the undersigned notary public, personally appeared:

BURL DANIEL, C.P.C.U., C.I.C., C.R.M.

Who after being first duly sworn, did depose and state:

1.     He is a competent person of the full age of majority and a resident of Fort Worth,

Texas.

2.     His curriculum vitae and compilation of cases in which he has testified as an

expert witness are attached hereto as Exhibit No. 1.

3.     His area of expertise relevant to this matter is in insurance coverage.

4.     He was retained on behalf of Antill Pipeline Construction Co., Inc. ("Antill") to

determine whether Commercial Umbrella Policy No. BE 7613156 issued by Chartis Specialty

1

Insurance Company, formerly known as American International Specialty Lines ("Chartis"), provides coverage to Tarpon Rentals, Inc. for damages that it may be liable for arising from the allision of May 20, 2009.

5. He conducted a comprehensive study of all relevant materials and accurately and comprehensively summarized his analysis in his expert report attached to Antill's Motion for Summary Judgment against Chartis in the above-captioned matter.

6. If called to testify in this case, he would testify with the conclusion and opinions set forth in his expert report attached to Antill's Motion for Summary Judgment against Chartis in the above-captioned matter.

7. The foregoing statements are true and correct to the best of his knowledge, information, and belief.

**BURL DANIEL, C.P.C.U., C.I.C., C.R.M.**

**SWORN TO AND SUBSCRIBED**

**BEFORE ME, ON THIS** 16

**DAY OF** July , 2012.

Trish Jefferson
My Commission Expires
03/12/2016

NOTARY PUBLIC
Printed Name: TRISH Jefferson
No.: 12891841-1
Commission Expires: 3/12/16

2