UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE<br>COMPLAINT OF ANTILL PIPELINE<br>CONSTRUCTION CO., INC. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION NO. 09-3646 c/w 10-2633,<br>11-3058, & 2:12-cv-1309<br>Relates to: 2:12-cv-1309<br><br>JUDGE HELEN G. BERRIGAN<br><br><br>MAG. DANIEL E. KNOWLES, III |
| * * * * * * * * * * * * * * * * * | * | |

**MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OF W&T OFFSHORE, INC.**

**MAY IT PLEASE THE COURT:**

The background of this consolidated litigation arising out of a tragic pleasure craft accident late one night in May 2009 is well known to the Court. After an evening at a seafood dinner on Bayou Dularge in Houma, five men were killed when the fishing boat transporting them struck a moored barge. Three years later, the owner of the barge, Antill Pipeline Construction Co., Inc. ("Antill") filed a new lawsuit against W&T Offshore, Inc. ("W&T"), alleging, *inter alia*, that W&T is responsible for the accident as the employer of one of the decedents, William N. Voss.[1]

Mr. Voss was an engineer who lived near and worked at his employer's headquarters in Houston, Texas. In May 2009, he took time off from work to attend a fishing tournament in his "home town" of Houma, Louisiana. Mr. Voss attended the tournament with personal friends, with whom he fished in the past. He paid for the trip with his own money—even though he had a company credit card—and stayed at his own fishing camp with these friends that he had known

---

[1] Antill plead that Mr. Voss was a passenger in the vessel owned by someone else, and being driven at the time by another one of the decedents.

525848

for years. Mr. Voss' employer, W&T, did not ask him to go on the trip, nor did the company sponsor the event. Under these circumstances, the recent lawsuit by Antill against W&T for vicarious liability for the alleged fault of Mr. Voss in causing the fatal accident in this case has no legs on which to stand.

The law on vicarious liability that applies here is straightforward: W&T can be liable for Mr. Voss' conduct only if he was acting within the "course and scope" of his employment at the time of the allision. An employee like Mr. Voss acts within the course and scope of his employment "only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." *Baumester v. Plunkett*, 95-2270 (La. 5/21/96); 673 So. 2d 994, 996. This requires that his conduct must have been "so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business." *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974). As to the employee's motivations, if "the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to activity if the act is otherwise within the service." *Emert v. Hartford Ins. Co.*, 559 So. 2d 467, 477 (La. 1990).

Here, the allision at issue occurred late at night when Mr. Voss was not and would not normally have been working. He was also out of state from where he normally works. Mr. Voss was on a fishing trip with friends while staying at his personal fishing camp. He had requested time off from work to go on this social trip, which W&T did not sponsor, pay for, or ask Mr. Voss to attend. Under these circumstances, there is no genuine issue of fact to be decided by a jury: Mr. Voss simply went fishing and socializing on his own time and at his own expense, and W&T cannot be vicariously liable for anything that happened as a result. For these reasons, the Court should grant W&T's motion and dismiss it from the action.

## BACKGROUND AND PROCEDURAL HISTORY

### A.     The fishing tournament in Houma and allision with the Antill barge.

The accident occurred on the night of May 20, 2009, when the 24-foot Hanko pleasure boat struck a barge in the Falgout Canal near Houma, Louisiana. All five passengers in the boat were killed as a result of the allision with the barge, which Antill owned and operated. One of the passengers, Bill Voss, was a W&T employee residing in the area of Houston, Texas. On May 13, 2009, Mr. Voss submitted a written request to take time off of work to go to his "home town" to attend the annual Houma Oilmen's Fishing Tournament. To do so, he asked his boss, Joseph P. Slattery, to take "personal vacation time." The allision happened at about 11:30 p.m.,[2] when Mr. Voss and his group of friends were on the way back from attending a crawfish boil to spend the night at Mr. Voss' personal fishing camp.

Mr. Voss' widow, Jane Voss, testified that she and her husband bought the camp in 2008.[3] The family went to the camp six or seven times a year to go fishing.[4] But they "never" used the camp for business purposes, and W&T did not pay for the mortgage note on or maintenance of or repairs of the camp:[5]

> Q.    . . . when you purchased the camp, was that camp used for personal or business?
>
> A.    Personal.
>
> Q.    It had no business –
>
> A.    No.

---

[2] *See* Exhibit "A" (Death Certificate of William N. Voss).
[3] Exhibit "B" (Deposition of Jane Voss), pp. 21-22, 54-55.
[4] *Id.* at p. 22.
[5] *Id.* at pp. 22-23, 52. Mrs. Voss originally filed a claim for worker's compensation benefits with the United States Department of Labor's Office of Worker's Compensation under the Longshore Harbor Workers Compensation Act (who opened file number 07-186548). Mrs. Voss abandoned her worker's compensation claim after receiving a copy of the form requesting time off from work to go to the fishing tournament in Houma that Mr. Voss submitted to his supervisor.

       Q.     All right. By W&T?

       A.     No.

Mr. Voss was originally from Houma, Louisiana, where he met his wife.[6] He graduated from LSU in 1983 with a degree in Petroleum Engineering.[7] In 1997, Mr. Voss got a job with W&T as a drilling engineer to work at its field office in Mandeville.[8] Mr. Voss lived and worked in Mandeville from 1997 until 2006, when he was transferred to W&T's office in Houston, Texas after Hurricane Katrina.[9] From 2006 until the time of his death, Mr. Voss lived in Katy, Texas, and worked at W&T's office headquarters in Houston.[10]

Since long before he got a job with W&T or moved to Houston, however, Mr. Voss had been a regular at the Houma Oilmen's Fishing Invitational: according to his wife, Mr. Voss had attended annually for the past 15 to 20 years before the accident.[11] The 2009 tournament was scheduled to take place on the Memorial Day weekend from May 21, 2009 through May 24, 2009 (a Thursday through a Sunday). About a week before the tournament was set to start, Mr. Voss filled out an "absentee-vacation request form" by which he requested May 21st and 22nd off from work to fish at the tournament.[12] (Because the Monday after the tournament was Memorial Day, Mr. Voss noted on the form that he intended to return on Tuesday, May 26th.) He characterized his time off to his boss as "personal vacation time."[13] Mr. Voss submitted the form to his boss, Joseph P. Slattery, who approved and signed it:

---

[6] Exhibit "B" (Deposition of Jane Voss), p. 15.
[7] *Id.*
[8] *Id.* at pp. 7, 12-13.
[9] *Id.* at p. 19.
[10] *Id.* at pp. 7, 12-13.
[11] *Id.* at pp. 92-93.
[12] *See* Exhibit "C" (Declaration of Joseph P. Slattery), ¶¶ 7-9 and Exhibit "1" thereto.
[13] *Id.* at ¶ 8.

> VACATION ___  SICK / PERSONAL ___  BEREAVEMENT ___
> JURY DUTY ___ (Attach order)  FLOATING HOLIDAY ___  OTHER ✓
>
> Employee Name: William N. Voss  Date 5-13-09
> Manager/Supervisor: J. P. Slattery
> Days Requested: May 21, 22, 2009
> Return to work date: May 26, 2009
> Total days requested: 2
> Does any days requested involve a W&T scheduled Holiday? Yes ✓ No ___
> List Holidays: May 25, 2009
>
> ---
>
> MANAGERS and SUPERVISORS: PLEASE COMPLETE WITH ORIGINAL SIGNATURES AND RETURN TO EVA ILANGA, HR COORDINATOR, LOCATED ON THE 4TH FLOOR. If denied return to the employee
> Managers Approval: (print) J. P. Slattery (sign) [signature]
> Employee: (print) William N. Voss (sign) [signature]
> P/R Manager (initial) _____

The accident happened late at night on the eve of the first day of the tournament.[14] Although Mr. Voss had a company credit card, he did not charge any expenses related to the trip to the company.[15] Nor did W&T sponsor the tournament.[16] Likewise, W&T did not own, operate, or lease the boat involved in the accident, which was the personal property of another of the decedents, Mr. Michael Carrere.[17]

B. **Antill's Limitation Action.**

The day after the accident, Antill filed a Complaint for Exoneration or Limitation of Liability in federal court in New Orleans.[18] Survivors of each of the decedents filed claims in

---

[14] *See* Exhibit "A" (Death Certificate of William N. Voss); Exhibit "D" (Deposition of Robert Wheeler), pp. 15, 18, 53.
[15] Exhibit "C" (Declaration of Joseph P. Slattery), ¶¶ 17-18 and Exhibit "3" thereto.
[16] *Id.* at ¶ 11.
[17] Exhibit "E" (Title to Boat Owned by Michael Carrere).
[18] *See In the Matter of Antill Pipeline Construction Company, Inc.,* Civil Action No. 2:09-cv-03646, pending in the United States District Court for the Eastern District of Louisiana. Antill's original Complaint alleged only admiralty jurisdiction, but it filed its First Amended Complaint on May 22, 2012 to allege diversity jurisdiction. *See* First Amended Complaint (Rec. Doc. 6), ¶ I.

525848

- 5 -

the Limitation Action. In response to the claims filed by the survivors of Mr. Voss, Antill brought a third-party demand against Tarpon Rentals and the survivors of Michael Carrere, alleging, among other things, that Mr. Carrere was driving the boat at the time of the allision and that Tarpon Rentals was vicariously liable as his employer. Antill's third-party demand said:[19]

VII.

On or about May 20, 2009, a 23 feet [sic] Hanko aluminum recreational vessel equipped with a Yamaha 300 horsepower outboard motor, which was owned and **being operated by Michael James Carrere, was traveling at an excessive rate of speed when it allided with the [Antill barge]** . . . .

C. <u>**The contribution claims against W&T and the survivors of Mr. Voss.**</u>

Three years later, Antill filed a lawsuit for contribution against W&T and the survivors of Mr. Voss. Antill's suit alleges that W&T is vicariously liable for the fault of Mr. Voss for providing alcohol to his fishing group before the allision. Antill maintains, however, that Mr. Carrere was operating the boat at the time of the allision:[20]

XI.

Prior to the subject incident, decedent William Voss provided alcohol to all decedents, **including Hanko vessel operator Carrere**, which they all consumed.

Antill's vicarious liability claims against W&T are, therefore, apparently based entirely on the allegation that Mr. Voss provided alcohol to the other decedents and for "allowing" Mr. Carrere to operate the vessel while intoxicated.

---

[19] *See* Antill's Answer to Claim of Jane Voss, as Alleged Heir at Law to the Estate of William Norris Voss, and Third-Party Complaint (Rec. Doc. 19), p. 5.
[20] *See* May 21, 2012 Complaint, filed in the matter entitled, *Antill Pipeline Construction Co., Inc. v. W&T Offshore, Inc., et al.*, Civil Action No. 2:12-cv-01309, United States District Court for the Eastern District of Louisiana. The lawsuit against W&T was consolidated with the Limitation Action.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A defendant who seeks summary judgment against a plaintiff must demonstrate the absence of any genuine issue of material fact by showing there is no evidence to support an essential element of the plaintiff's claim or by submitting summary judgment evidence that negates the existence of a material element of the plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986).

Once the moving party makes the required showing, the burden shifts to the non-moving party to show that summary judgment is inappropriate. To avoid summary judgment, the non-moving party must, by submitting opposing evidentiary documents or referencing those already in the record, point out specific facts showing that a genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). If the non-moving party fails to show through competent evidence that there is a genuine issue of material fact as to an element essential to its case, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Here, Antill bears the burden at trial to prove that Mr. Voss was acting within the course and scope of his employment at the time of the accident in 2009. *See Richard v. Hall*, 03-1488 (La. 4/23/04); 874 So. 2d 131, 137. As there is no evidence in support of this element of Antill's vicarious liability claim against W&T, summary judgment must be granted. *See id.* (affirming district court's dismissal of employer on summary judgment on grounds that employee was not acting in the course and scope of his employment at the time of the hunting accident at issue).

**LAW AND ARGUMENT**

Making alcohol available to social friends on fishing trips at a personal camp was not a job duty of Mr. Voss and he was not assigned by his employer to attend the fishing tournament in Houma. The facts belie any argument to the contrary: Mr. Voss completed a vacation form and took time off from work to go to the tournament, stayed at his personal fishing camp, and spent his own money for the trip. There is not a shred of evidence that W&T or Mr. Voss intended for the event to be within the "course and scope" of Mr. Voss' employment, and that W&T directed Mr. Voss to make alcohol available to his friends. Mr. Voss simply wanted to go fishing—on his own time and at his own expense—and his employer can have no liability for what happened as a result.

    A.    **Controlling law on vicarious liability.**

"The doctrine of *respondeat superior* applies in admiralty . . . ." *Stoot v. D & D Catering Serv., Inc.*, 618 F. Supp. 1274 (W.D. La.1985), *affirmed,* 807 F.2d 1197 (5th Cir. 1987). Because *respondeat superior* is traditionally a state law issue, however, courts freely borrow from state law on vicarious liability in admiralty cases, as this Court has previously done in this case. *See, e.g., Baggett v. Richardson*, 342 F. Supp. 1024, 1027 (1972) (applying Louisiana law on *respondeat superior* in admiralty case and noting that "the areas of tort law dealing with . . . *respondeat superior* apparently are uniformly treated throughout the fifty states, and the law of Louisiana in these areas is representative of the law throughout the states").

The principle of vicarious liability in Louisiana law is codified in Civil Code Article 2320, which provides, in pertinent part:

> Masters and employers are answerable for the damage occasioned
> by their servants and overseers, in the exercise of the functions in
> which they are employed.

Vicarious liability under Article 2320 rests on the "sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities." *Richard v. Hall*, 2003-1488 (La. 4/23/04); 874 So. 2d 131, 138; *see also Iglinsky v. Player*, No. 08-650-BAJ-CN, 2010 WL 4905984, at *2 (M.D. La. July 27, 2011).

Naturally, then, vicarious liability cannot attach to the actions of an employee that are not within the ambit or the "course and scope" of his employment. *See Kelly v. Dyson*, 10-61 (La. App. 5 Cir. 5/25/10); 40 So. 3d 1100, 1105; *Iglinsky*, 2010 WL 4905984, at *3. "Course" means the time and place that the conduct occurred, while "scope" involves the employment-related risk of injury. *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96); 673 So. 2d 994, 996; *Iglinsky*, 2010 WL 4905984, at *2. These are two separate, but related, inquiries, and "vicarious liability will attach . . . only if the employee is acting within the ambit of his assigned duties **and also** in further of his employer's objective." *Baumester v. Plunkett*, 95-2270 (La. 5/21/96); 673 So. 2d 994, 996 (emphasis added). As the plaintiff, Antill bears the burden of proof at trial on these issues. *See Richard v. Hall*, 03-1488 (La. 4/23/04); 874 So. 2d 131, 137.

In *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974), the Louisiana Supreme Court held that the determinative question here is whether the employee's tortious conduct "was so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's general interest." *LeBrane* was an intentional tort case, but the Court later clarified that the same test applies in negligence cases, except that in such cases the court "need only determine whether the servant's *general activities* at the time of the tort were within the scope of employment." *Roberts v. Benoit*, 605 So. 2d 1032, 1041 (La. 1991) (emphasis added).

As to what constitutes the "scope" of employment, the Louisiana Supreme Court has held that the motivation of the employee is what matters: "If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service." *Emert v. Hartford Ins. Co.*, 559 So. 2d 467, 477 (La. 1990). "In resolving this issue [in negligence cases, the] focus is on the servant and whether his activity *at the time of the accident*, was within the scope of his employment. *Richard v. Hall*, 03-1488 (La. 4/23/04); 874 So. 2d 131, 140 (emphasis added).

In *Emert*, the Court found that the potential "scope" of employment broadens as the rank of the employee at issue increases:

> The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks. This is the logical extrapolation of a rule that fixes liability based upon the course of employment: The greater potential course of employment expands the servant's potential opportunities to commit torts. These opportunities are maximized where the servant effectively determines the course of his own employment, as is the case when the servant is actually the owner of the enterprise. One of the advantages of creating a separate entity for the operation of the enterprise is that the business enterprise is not liable for all of the torts of the owner.

*Emert*, 559 So. 2d at 477. Thus when the employee is also a principal of the business, the "inherent incentives to pursue company interests whenever possible and the fact that the 'servant' often controls the 'master' rather than vice-versa, the line between 'business' and 'personal' activity is often a hazy one." *Id*.

**B.    Entertaining business associates at fishing trips was not a job duty of Mr. Voss.**

Unlike the employee in *Emert*, Mr. Voss was not a principal of W&T, which is a publicly traded company on the New York Stock Exchange. He was an engineer with supervisory duties

for certain of W&T's operations in the Gulf.[21] He was not a salesperson.[22] He was not assigned to perform any marketing at any time relevant to this case.[23] W&T did not assign the authority or responsibility to Mr. Voss to perform any business on its behalf in connection with this fishing tournament, or with those he was with at the time of the accident.[24] For these reasons alone, Mr. Voss did not act in the "course and scope" of his employment in attending a fishing tournament in Houma. *See Baumester v. Plunkett*, 95-2270 (La. 5/21/96); 673 So.2d 994, 996.

Under *LeBrane*, W&T can be liable only for the conduct of its employees that "was so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to [W&T's] business." *LeBrane*, 292 So. 2d at 218; *see also Richard*, 874 So. 2d at 139 (applying *LeBrane* in a negligence case involving a hunting accident). Mr. Voss' fishing trip fails this test in every conceivable respect: the tournament that he was attending in Houma was in a different state from where he works and lives in Texas; he asked for time off of work when he otherwise would normally be in the office; and he normally does not go fishing as a requirement of his employment or as part of his job as an engineer, nor did his boss, Mr. Slattery, ask him to. Far from "closely connected," the relationship in "time, place, and causation" between the fishing trip to Houma and Mr. Voss' job at W&T was non-existent. *See* Restatement (Third) of Agency § 7.07, Reporter's Notes (2006) (noting that "spacial proximity between an employee's tort and . . . the workplace" may be a significant factor militating against vicarious liability).

---

[21] *See* Exhibit "C" (Declaration of Joseph P. Slattery), ¶ 5.
[22] *Id*. at ¶ 6.
[23] *Id*.
[24] *Id*. at ¶ 11-13.

### C. All of the evidence shows that Mr. Voss attended the fishing tournament for pleasure—not business.

Regardless of his job duties, as a matter of law Mr. Voss did not act within the "course and scope" of his employment in attending the fishing tournament unless, to some "appreciable extent," business purposes motivated him to go. *Emert*, 559 So. 2d at 477. Without exception, the evidence here is to the contrary.

Not only did Mr. Voss get permission to take time off of work to attend the tournament, but he also paid for the trip entirely with his own money.[25] Mr. Voss was a vice president at W&T and had a company credit card to use for business expenses. He was not shy about using his card for business expenses—no matter how big or small: on countless occasions through the years he was with W&T, Mr. Voss used his company card to pay for things like flights, hotel stays, meals, and dues for membership in professional organizations.[26] Had his fishing trip to Houma been work-related to "any appreciable extent," Mr. Voss most certainly would have used his W&T credit card to pay for it.

When he went on the fishing trip, Mr. Voss stayed at his personal fishing camp that his wife testified was "never" used for business purposes.[27] And he attended the tournament in his home town of Houma—hundreds of miles and in another state from where he works for W&T—as a guest of a friend that he had known for over 30 years.[28] Under these circumstances, there can be no question that Mr. Voss attended the tournament for personal reasons, outside of his employment, and Antill can offer no evidence to the contrary.

---

[25] Exhibit "C" (Declaration of Joseph P. Slattery), ¶¶ 7-9, 12, 14.
[26] *Id.* at ¶ 13 and Exhibit "2" thereto (Expense Reports of Mr. Voss from 2009).
[27] *See* Exhibit "B" (Deposition of Jane Voss), pp. 22-23 and 52.  W&T was not on the title to this property, did not ask Mr. Voss to purchase it or use it for any purpose, and did not pay for any expenses related to the camp.  *See* Exhibit "C" (Declaration of Joseph P. Slattery), ¶¶ 19.
[28] Exhibit "B" (Deposition of Jane Voss), pp. 15; Exhibit "D" (Deposition of Robert Wheeler), pp. 15, 18; *see also* Exhibit "C" (Declaration of Joseph P. Slattery), ¶ 14 ("Most of the individuals who perished in the accident were personal friends of Mr. Voss who he knew socially, and with whom he had fished on prior occasions.").

In *Richard v. Hall*, 03-1488 (La. 4/23/04); 874 So. 2d 131, the Louisiana Supreme Court affirmed the summary judgment dismissal of vicarious liability claims against an employer under similar circumstances.  There, survivors of a hunter killed in a hunting accident sued the employer of an executive who negligently shot the decedent.  *Id*. at 135-36.  The executive was a controller for the defendant employer, who had plans to use the hunting camp for client development purposes.  *Id*.  The employer moved for summary judgment, which the district court granted.  *Id*.

The Louisiana Supreme Court affirmed.  The Court found that, even though the employer had plans to use the hunting camp for business purposes *at some point*, that was in itself insufficient to render its controller's actions in the "course and scope" of his employment:

> A recreational activity cannot fairly be said to be characteristic of the business's activities merely upon the intent of the business to use the recreational activity for business purposes at an unspecified future time.  Particularly relevant is that the servant . . . for whose actions the plaintiffs are trying to hold the employer vicariously liable, never used the recreational activity for business purposes and was not actuated for purposes of serving the business at the time of the accident. [*Id*. at 141.]

Here, W&T has an even better case for summary judgment: W&T had no intention to use Mr. Voss' personal camp for business purposes and had never done so in the past.[29]  Likewise, Mr. Voss' actions in taking time off of work to attend the tournament and paying for related expenses with his personal funds demonstrate that his attendance was not motivated by business purposes.

Moreover, even had Mr. Voss been motivated to attend the fishing tournament for business purposes—of which there is no evidence—the accident did not occur during the tournament; it happened late at night while Mr. Voss was on the way back from a crawfish boil

---

[29] *See* Exhibit "C" (Declaration of Joseph P. Slattery), ¶ 19.

to retire at his personal fishing camp. If the determinative question here is whether Mr. Voss was acting within the course and scope of his employment "at the time of the accident," then there can be no doubt that he was not. Under these circumstances, Antill cannot bear its burden of proving that Mr. Voss acted within the course and scope of his employment at the time of the tragic accident.

## CONCLUSION

When, as in this case, an employee allegedly commits a tort while off of work attending a leisure event in another state, it would be "neither fair nor true-to-life to characterize the employee's action as that of a representative of the employer." Restatement (Third) of Agency § 7.07 (2006). As there can be no genuine dispute of material fact that neither Mr. Voss nor W&T intended a fishing trip to Houma on Mr. Voss' personal time and at his own expense to be work-related, summary judgment dismissing W&T is proper.

Respectfully submitted,

**FRILOT L.L.C.**

*/s Miles P. Clements*
**MILES P. CLEMENTS (#4184), T.A.**
**BRUCE A. CRANNER (#1796)**
**EVERETT R. FINERAN (#31153)**
1100 Poydras Street, Suite 3700
New Orleans, LA  70163
Telephone: (504) 599-8004
Facsimile: (504) 599-8104
Email: mclements@frilot.com
Email: bcranner@frilot.com
Email: efineran@frilot.com
**Attorneys for Defendant,**
**W&T Offshore, Inc.**

**CERTIFICATE OF SERVICE**

      **I HEREBY CERTIFY** that on the 16th day of November, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                              */s Miles P. Clements*
                                              **MILES P. CLEMENTS**